**Edward Eugene SAXTON, Relator,**

v.

**The Honorable Allen J. DAGGETT, Presiding Judge of the 310th District Court of Harris County, Respondent.**

No. 01–93–00645–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 7, 1993.

Gerald K. Payte, W.B. McAfee, Houston, for relator.

Piro·Nichols·Lilly, L.L.P., John F. Nichols, Houston, for respondent.

Before MIRABAL, WILSON and DUGGAN, JJ.

## OPINION

DUGGAN, Justice.

Relator, Edward Eugene Saxton ("Saxton"), seeks mandamus relief from orders entered by respondent, the Honorable Allen Daggett, in a proceeding Saxton filed to modify conservatorship of the children of Saxton's marriage to Maria Ford Heap (formerly Saxton) ("Heap"), the real party in interest. Respondent appointed an attorney ad litem for the children, and suspended Saxton's visitation periods set forth in the divorce decree, subject to later reinstatement upon recommendation of the ad litem. Later, Saxton failed to pay interim fee awards of $19,000 to Heap's attorney, and $5,000 to the attorney ad litem, by the deadline respondent had imposed. Saxton asserts that respondent abused his discretion (1) when he suspended Saxton's visitation periods with his two sons; (2) when he ordered Saxton to pay interim fees to Heap's attorney; and (3) when, in response to Saxton's failure to pay the interim fee awards, he prohibited Saxton from conducting further discovery in the case and struck Saxton's motion to modify until Saxton paid the $24,000 in interim fees. Saxton also asserts that he has no adequate remedy by appeal from these orders. We agree. We conditionally issue a writ of mandamus.

### Background

The marriage between Saxton and Heap was dissolved on May 24, 1988, when the respondent signed a final decree of divorce. Heap was appointed managing conservator of their minor children, Scott and Christopher, and Saxton was appointed possessory conservator, with the right to possession of the boys during regular weekly and holiday visi-

tation periods set forth in the decree. The decree also provided that Heap would have the power to consent to medical, psychiatric, and surgical treatment for the boys; Saxton was given the power to consent "to medical and surgical treatment [for the boys] during an emergency involving an immediate danger to [their] health and safety ... during periods of possession." Heap and Saxton were each to be responsible for paying 50 percent of the boys' health care expenses not paid by insurance.

On January 27, 1993, Saxton filed a motion to modify the divorce decree, asking that he be awarded sole managing conservatorship of both boys. Heap answered, praying that Saxton be denied all relief he sought, and that she be awarded judgment against him for a reasonable attorney's fee of "no less than $65,500" in connection with opposing the motion to modify. At the same time, Heap moved that, pending the final resolution of the proceeding, Saxton be ordered to pay her interim attorneys' fees and expenses of "at least $35,500."

Later, during Saxton's deposition, Heap discovered evidence that, on some 20–odd occasions in the four and one-half years then elapsed since their divorce, Saxton had taken the boys to various health professionals— including visits to a psychiatrist and/or a mental health counselor for evaluation. She then amended her motion, adding a request that Saxton be enjoined from taking either boy to "any doctor, hospital, medical clinic, dentist, psychiatrist, psychologist, counselor, or mental health person(s) for any reason," and asked respondent to hold Saxton in contempt for the preceding such incidents.[1] Heap did not ask respondent to make any temporary or permanent modification of Saxton's possessory rights, either then or at any later time.

Respondent heard Heap's motions on April 5, 1993. First, Heap testified without objection about the evidence that had emerged during and after Saxton's deposition concerning visits to doctors, dentists, and other health professionals, and about the relief she was seeking. Next, Heap testified in support of her claim concerning the boys' medical expenses. Following Heap's cross-examination, her attorney, Earle S. Lilly, testified that he was charging Heap $400 per hour, and introduced a copy of his firm's invoice to Heap, showing that hourly charges to that date for his and his legal assistant's time totalled approximately $10,000.[2] Lilly further testified that he estimated that necessary trial preparation would entail an additional $10,000 in fees. Lilly was not cross-examined.

Heap then rested, and Saxton testified. Saxton did not dispute that he had taken the boys for health care without Heap's permission or contemporaneous knowledge on the occasions in question. Instead, he testified concerning the underlying circumstances and his reasons for doing so on those several occasions. Next, Saxton testified in opposition to Heap's claim concerning the boys' medical expenses.[3] Finally, he testified about his income and expenses, to show that he was unable to pay interim attorney's fees awards in the amount requested by Heap.

### The April 5 Contempt Findings and Orders

At the conclusion of the April 5 hearing, respondent announced his rulings from the bench. First, he found Saxton in contempt for having *twice* taken the boys to a psychiatrist or mental health counselor for evaluation. For those two violations, respondent sentenced Saxton to six days in jail, assessed

---

1. Heap also asked respondent to hold Saxton in contempt for failing to reimburse her for his half of certain prior medical expenses she had paid on behalf of the boys. Respondent ultimately did so. Saxton raises no complaint before this Court concerning that ruling.

2. Lilly testified that in addition to these fees, he had charged Heap an initial $10,000 retainer fee, and that he was "not asking reimbursement for [that retainer fee] at this time."

3. He testified he had not received all of the medical bills that Heap had testified she sent to him for reimbursement for his share; he had requested sufficient information from Heap to submit insurance claims, and had received only some of that information; and he had mailed a reimbursement check to Heap, which was returned in the mail.

a $200 fine, and ordered Saxton to pay $58 in court costs and $1,000 in attorney's fees incurred by Heap in connection with the contempt action. Respondent stated, "I may entertain a motion to suspend the imposition of that sentence upon the payment of the fine, cost and fees."

Second, respondent found Saxton additionally in contempt for failure to pay $1,947.24, Saxton's one-half share of medical expenses Heap had incurred on behalf of the boys on 32 specified dates, and respondent sentenced Saxton to three days in jail for each, for a total of 96 days in jail. Again, respondent indicated on the record that he might suspend the imposition of the sentence upon full payment of the amount involved.

Next, respondent (1) ordered Saxton to pay $9,000 in interim attorney's fees to Lilly for work already performed, and $10,000 for work to be performed, (2) ordered a social study of both the Saxton and Heap homes, (3) appointed T. Wayne Harris as attorney ad litem for the children, (4) ordered Saxton to pay $5,000 in interim attorney's fees to Harris, and (5) suspended Saxton's visitation periods set forth in the decree. Respondent gave Saxton until 5:00 p.m. on Monday, April 12, 1993, a period of one week, to pay in full all $24,000 in interim fee awards.

Heap had not at any time asked respondent to make any temporary or permanent modification of Saxton's possessory rights.

Respondent stated, in suspending Saxton's visitation periods:

> All visitation is here and now suspended, *subject to the children visiting with the ad litem, and him reviewing the file and conferring with the children and reviewing the psychological testing that has been done,* and thereafter, sir, upon report to the Court, unless you folks agree otherwise, I will entertain further motions in accordance with his recommendations ... and set a hearing thereon for next Thursday, the 15th of April, at 9:00 a.m.

(Emphasis added.)

Saxton did not pay any portion of the $24,000 in interim fee awards by the deadline respondent imposed, April 12, 1993. On April 14, 1993, Heap filed a motion to strike Saxton's pleadings and for sanctions, asking that respondent prohibit Saxton from conducting further discovery, and strike Saxton's pleadings until he paid the interim fees. Heap also asked that her motion be heard at the hearing already set for the following day. Heap served her motion to strike and for sanctions on Saxton less than three days before the April 15 hearing, in violation of TEX.R.CIV.P. 21. Thus, at the April 15 hearing, Saxton requested and received a continuance on those motions. On April 15, respondent signed written orders embodying his earlier oral pronouncements at the conclusion of the April 5 hearing. One of the April 15 orders addressed everything but the contempt.[4] On the contempt, respondent signed

---

4. The portion of the order that suspends Saxton's visitation rights read:

> The Court finds good cause, and finds such to be in the best interest of the minor children, that the visitation periods of EDWARD EUGENE SAXTON set forth in the Final Decree of Divorce of May 24, 1988, be suspended, instanter. It is further ordered that such periods remain suspended until such time as T. Wayne Harris finds that visitation periods of EDWARD EUGENE SAXTON are to be reinstated. Upon such finding, T. Wayne Harris is ORDERED to file such recommendation with this court for final approval.

The portions concerning interim attorney's fees read:

> The Court finds that $5,000.00 is reasonable and necessary interim ad litem attorney fees, and orders that it is just and right that [Saxton] pay such. It is therefore ORDERED that [Saxton] pay directly to T. Wayne Harris ... on or

before 5:00 o'clock p.m., April 12, 1993, the sum of $5,000.00 for interim ad litem fees.

. . . .

> The Court finds that [Heap] has incurred reasonable and necessary attorney's fees and expenses in the amount of $9,000.00 through March 31, 1993, the Court finding such fees having been incurred as "necessaries" on behalf of the minor children, in connection with the modification action.... The Court therefore ORDERS [Saxton] to pay to Earle S. Lilly, attorney for [Heap], the sum of $9,000.00 for said attorney's fees and expenses ... directly to Earle S. Lilly ... on or before 5:00 o'clock p.m. April 12, 1993.

> In addition ... the Court finds that an additional $10,000.00 is reasonable and necessary attorney fees for necessary discovery purposes, and orders that it is just and right that [Saxton] pay such discovery costs and, it is therefore ORDERED that [Saxton] pay directly to Earle S. Lilly ... interim discovery costs in the

a separate order in which he took notice that Saxton had paid all fines, costs, and attorney's fees ordered; respondent suspended the jail time previously pronounced from the bench; and placed Saxton on probation, on conditions that he not violate any valid court order issued in connection with the motion to modify, and that he not consent to medical treatment for either of the boys or take either boy to "any doctor, hospital, medical clinic, dentist, psychiatrist, psychologist, counselor, or mental health person(s) for any reason without the written consent of ... Heap, or order of this court."

### The April 20 Hearing and Sanctions Order

On April 20, 1993, an evidentiary hearing was held before respondent. Saxton testified in detail about his financial condition and his inability to pay $24,000 in interim attorney's fees in a lump sum. He also testified that he was willing and able to pay $100 per month against the fee amounts respondent had ordered him to pay. Saxton was cross-examined by both Lilly and Harris, then was examined on redirect. The only other witness called was Harris, by Saxton's counsel. His testimony is not germane here.[5]

At the conclusion of the hearing, respondent signed written orders prohibiting Saxton from conducting further discovery, and striking Saxton's pleadings in the modification of conservatorship proceeding until Saxton paid the $24,000 in interim fees previously ordered.

Saxton then sought and obtained leave from this Court to file his petition for writ of mandamus, complaining of (1) the suspension of his visitation periods with his sons, (2) the prohibition on further discovery, and (3) the striking of his pleadings. After oral argument, Saxton supplemented his petition to seek mandamus relief also from (4) respondent's order that he pay $19,000 in interim fees to Heap's attorney. Saxton does not seek mandamus relief from respondent's order that he pay $5,000 to the ad litem.

### Striking of pleadings and prohibition on further discovery

■ At oral argument before this Court, both parties agreed that Rule 215 of the Texas Rules of Civil Procedure was the basis for respondent's order striking Saxton's pleadings and prohibiting his further discovery, although neither Heap's motion nor respondent's order refers to the rule by name. At the April 15 hearing at which the motion for sanctions was continued, respondent emphasized that he had "certainly intended" the interim attorneys' fees and ad litem fees to be for the purpose of discovery.[6] Additionally, respondent's April 15 written order, directing Saxton to pay interim attorney's fees, expressly recites that the $10,000 to be paid to Lilly, in particular, was "for necessary discovery purposes" and constituted "interim discovery costs."

■ Rule 215 addresses sanctions for *abuse* of the discovery process. The purposes of discovery sanctions are:

(1) to secure the parties' compliance with the rules of discovery;

(2) to deter other litigants from violating the discovery rules; or

(3) to punish parties who violate the rules of discovery.

*Baluch v. O'Donnell,* 763 S.W.2d 8, 10 (Tex. App.—Dallas 1988, orig. proceeding).[7]

---

amount of $10,000.00 on or before 5:00 o'clock p.m. April 12, 1993, as necessaries for the minor children[.]

5. Respondent sustained Heap's objection to the second question asked of Harris, and no party examined him further.

6. Respondent elaborated by saying, in pertinent part,

You know, I want some stability in the lives of those children. I ordered that so these things could be explored, and gone into and investigated fully, and see what the problem is and

what all has been going on.... Mr. Harris should have already been able to start his work in this matter. I know there's been some work, discovery done by Mr. Lilly. He clearly undisputedly testified to it at the hearing. There wasn't any question about it. There wasn't even any cross-examination on his request for fees whatsoever.

7. In *Baluch,* the trial court ordered the father to pay $25,000 in interim attorney's fees to his spouse's attorney in a child custody case *without any relationship to discovery* and was held to have abused its discretion when it subsequently

Where there is no violation of the discovery rules, there is nothing to deter or punish, and no compliance to secure. A failure to obey a court order under section 11.11(a)(5) of the Family Code to pay interim attorney's fees by a specific date does not involve the issue of any abuse of discovery. *Baluch,* 763 S.W.2d at 10. Here, Saxton has not in bad faith *resisted* discovery—by, for instance, claiming manifestly inapplicable privileges, or refusing to comply with an order compelling responses.

In *Shirley v. Montgomery,* 768 S.W.2d 430 (Tex.App.—Houston [14th Dist.] 1989, orig. proceeding), the court held that a failure to comply with a court order in a child custody case, to pay $15,000 into the trust fund *of the child's attorney ad litem* for the costs and expenses of discovery, was itself sanctionable. *Id.* at 433. *Shirley* held that it was "*clear* that the money ... was to be used for discovery." *Shirley,* 768 S.W.2d at 433 (emphasis added). *Shirley* does not support the imposition of discovery sanctions for failure to comply with a court order to pay sums that *do not relate* to discovery. The *Shirley* court distinguished the *Baluch* case, stating:

> *Baluch* involved an order requiring the husband in a divorce suit to pay his wife's interim attorney's fees.... While in the present case, there has been much said about attorney's fees, the language of the orders as well as the testimony at the contempt hearing make it clear that the money in the present case was to be used for discovery costs and expenses, not attorney's fees. We, therefore, hold that *Baluch* is inapplicable to the present case.

*Shirley,* 768 S.W.2d at 433. In the present case, the trial court clearly ordered relator to pay *attorney's fees.* The quoted language from *Shirley* indicates this fact alone prevents the respondent from imposing rule 215 sanctions for failure to comply with the order.

Lilly testified he estimated that necessary trial preparation would entail an additional $10,000 in fees. The only evidence relating to the nature of that preparation was Lilly's

imposed sanctions under rule 215(2)(b) in response to the father's failure to pay the fees. 763

testimony that he had to take Saxton's deposition. However, he introduced a copy of his invoice, addressed to Heap, showing that he had already taken Saxton's deposition on March 18, 1993. That deposition precipitated Heap's motion for contempt in the first place. Moreover, it is clear from that same invoice that at least $9,000 of the $19,000 to be paid to Lilly was *not* for discovery, but for fees Heap had already incurred. Other than the activity connected to Saxton's deposition, most if not all of that $9,000 related not to discovery, but to attorney-client conferences between Heap and Lilly and the preparation of pleadings and motions on her behalf.

We do not here reach Saxton's contention, as was urged in *Shirley,* that he was unable to pay the fees ordered and it was, therefore, an abuse of discretion to sanction him for failure to comply. We hold that, on the facts before respondent on and after April 15, it was a clear abuse of discretion for respondent to find that the interim attorneys' fees were sought for the purpose of discovery. It was therefore, in turn, a clear abuse of discretion for respondent, on April 20, to rely on those same facts and the earlier finding to impose upon Saxton *any* ostensible discovery sanctions at all, let alone these very severe sanctions, for Saxton's failure to pay those interim attorneys' fees.

■ Whenever a trial court imposes sanctions that have the effect of adjudicating a dispute, whether by striking pleadings, dismissing an action, or rendering a default judgment, without the contemporaneous rendition of an appealable judgment, then the eventual remedy by appeal is inadequate. *TransAmerican Natural Gas v. Powell,* 811 S.W.2d 913, 919 (Tex.1991).

### The suspension of visitation periods

■ Section 14.08 of the Texas Family Code provides, in pertinent part,

> A court order or the portion of a decree that provides for the support of a child or the appointment of a conservator or that sets the terms and conditions of conserva-

S.W.2d at 11.

torship for, support for, or access to a child *may be modified only by the filing of a motion* in the court having continuing, exclusive jurisdiction of the suit affecting the parent-child relationship[.]

TEX.FAM.CODE ANN. § 14.08 (Vernon 1986 & Supp.1993) (emphasis added). Here, there was no such motion; respondent suspended Saxton's right to visitation *sua sponte.* In so doing, respondent failed to apply the clear statutory mandate of section 14.08. That failure clearly constituted an abuse of discretion.

■ Respondent's suspension of Saxton's visitation periods was a clear abuse of discretion for a second reason.

The *effect* of the suspension of Saxton's visitation periods with his children was to tend to compel him to pay the ad litem the interim fees respondent ordered. Saxton's visitations were suspended *subject to the completion of specified investigative tasks by the ad litem.* The decision about reinstatement was to take place upon consideration of the ad litem's recommendation, and the recommendation was itself to be based on the outcome of the investigation. Payment of interim fees to the ad litem for performing the investigation clearly related to when and *whether* that investigation would ever begin, and, in turn, to when Saxton's visitations would be reinstated.

■ While the sanctions listed in subdivision 2(b)(1)–(8) of rule 215 are not exclusive, the rule explicitly requires that any sanctions imposed be *just* under the circumstances. *TransAmerican,* 811 S.W.2d at 917. Here, we apply that requirement in light of section 14.07 of the Family Code, which provides, "The best interest of the child shall always be the primary consideration of the court in determining questions of managing conserva-

torship, possession, and support of and access to the child." TEX.FAM.CODE ANN. § 14.-07(a) (Vernon Supp.1993). We read the requirement to consider the best interest of the child as paramount in all phases of determining 14.07 questions—including the decision to impose discovery sanctions.

To sever all contact between a parent and his children will rarely, if ever, be a just sanction for a parent's failure to pay money, for whatever purpose—even one reasonably calculated to promote the safety, welfare, and/or the best interest of the children. Even a failure to pay court-ordered child support will not, standing alone, authorize a complete denial of visitation. *Gani v. Gani,* 500 S.W.2d 254, 255–56 (Tex.Civ.App.—Texarkana 1973, no writ).[8]

On and after April 5, there was no evidence before respondent that the safety, welfare, and/or the best interest of the children were endangered, except with respect to the visits to the psychiatrist and the mental health counselor. The complete suspension of Saxton's visitation periods was excessive, and burdened his right and ability to maintain his father-son relationship with each of his boys more than was necessary to address any demonstrated threat to the boys' wellbeing. The only arguably demonstrated threat here, the visits to the psychiatrist and the counselor, was adequately addressed by the contempt proceedings and the injunction respondent entered in connection with the contempt. There was no basis for concluding from the past visits to the psychiatrist and the counselor that the complete suspension of Saxton's visitation rights was necessary for the future safety and welfare of his children. There was no information before respondent, on and after April 5, addressing whether the complete suspension of Saxton's visitation rights was, independently, in the best inter-

8. *See also Reed v. Kenyon,* 713 S.W.2d 805, 807 (Tex.App.—Houston [1st Dist.] 1986, no writ) (managing conservator's obligation to allow child visitation and possessory conservator's obligation to pay child support are independent, separately-enforceable obligations); TEX.FAM.CODE ANN. § 14.03(d) (Vernon Supp.1993) ("The court *shall* appoint as a possessory conservator the parent who is not appointed as a sole or joint managing conservator *unless* it finds that parental possession or access is not in the best interest

of the child *and* that parental possession or access would endanger the physical or emotional welfare of the child. *A parent not appointed as a managing or a possessory conservator may be ordered to perform other parental duties, including paying child support....* The terms of an order that denies possession of a child to a parent or imposes restrictions or limitations on a parent's right to possession of or access to a child *shall not exceed those that are required to protect the best interest of the child."* (Emphasis added.)).

est of the children. Accordingly, it was an abuse of discretion to order Saxton completely cut off from his children—and, in effect, the children cut off from their father—until Saxton made the interim fee payments to the ad litem.

■ Mandamus is a proper remedy to compel enforcement of the right to possession of children pursuant to a court order. See *Forbes v. Wettman,* 598 S.W.2d 231, 232 (Tex.1980) (concerning managing conservator's right to possession). Where, as here, a parent is improperly precluded from access to his or her children, an eventual remedy by appeal is inadequate. *Jacobsen v. Haas,* 688 S.W.2d 634, 636 (Tex.App.—Corpus Christi 1985, no writ); *Almaraz v. Williams,* 673 S.W.2d 923, 925, 926 (Tex.App.—San Antonio 1984, no writ).

### Interim fees to Heap's attorney

■ Saxton also seeks mandamus relief from respondent's order that he pay $19,000 in interim fees to Heap's attorney. Saxton asserts that, because there is no evidence in the record that those interim fee payments were necessary to promote the safety and welfare of the children, respondent abused his discretion in ordering him to pay Heap's attorneys' fees. We agree.

Section 11.11(a)(5) of the Family Code provides that, "In a suit affecting the parent-child relationship, the court may make any temporary order, including the modification of a prior order, *for the safety and welfare of the child,* including but not limited to an order ... (5) for payment of reasonable attorney's fees and expenses." (Emphasis added.) Section 11.11(a) does not authorize a trial court, in a suit affecting the parent-child relationship, to make a temporary order for payment of reasonable attorney's fees for a purpose *other than* the safety and welfare of the child.

Here, respondent based his order on an asserted need to facilitate further discovery, to "level the playing field" in the suit. We

note this is not a case where the wife has little or no financial resources to defend the husband's attempt to modify conservatorship. Heap is married to a dentist, paid a $10,000 retainer fee, and agreed to pay her attorney $400 per hour. The circumstances do not call for "leveling the playing field" in the way respondent undertook. Adequate discovery from both sides was not without relation to the safety and welfare of the children; in general, adequate discovery could be expected to promote the development of a sufficient factual exposition, necessary here for respondent to decide the motion to modify conservatorship of the children in accordance with the best interest of the children. However, the fruits of discovery accomplished prior to the April 5 hearing were already available and would in the future promote the safety and welfare of the children to the extent of their power to do so; the extent of that power was not increased by *retroactively* shifting the cost of that discovery to Saxton. The order to Saxton to pay for future discovery by Heap is free of *that* infirmity, but, as noted above, the only evidence offered in support of the interim fee award for future discovery was Lilly's testimony about *past* discovery—namely, taking Saxton's deposition. Cf. *Almaraz,* 673 S.W.2d at 925, 926 (despite respondent's statutory authority to issue any temporary order if there is a serious immediate question concerning the welfare of a child, order held an abuse of discretion because order did not purport to rest on, and there was no finding with respect to, the existence of such a question).

On the facts before respondent on and after April 5, it was a clear abuse of discretion to order Saxton to pay $19,000 in interim fees to Heap's attorney.

■ Temporary orders under section 11.11(a) are not appealable. *Craft v. Craft,* 580 S.W.2d 814, 815 (Tex.1979). Mandamus is the appropriate remedy to attack the issuance of temporary orders under section 11.11. *Dancy v. Daggett,* 815 S.W.2d 548, 549 (Tex.1991, orig. proceeding).[9]

9. *See also Braden v. Downey,* 811 S.W.2d 922 (Tex.1991). A severe monetary sanction imposed for discovery abuse raises the real possibility that a party's willingness or ability to continue the

litigation will be significantly impaired, and an appeal affords an adequate remedy only if payment of the sanctions is deferred until final judgment is rendered and the party sanctioned has

**Denouement**

We hold that each of the three orders of which relator complains constituted a clear abuse of judicial discretion for which relator has no adequate remedy by appeal.

By order issued August 10, 1993, pending our opinion in this case, we conditionally issued a writ of mandamus directing Judge Daggett to vacate that portion of his April 15, 1993, order that suspended relator's visitation rights. We are reliably informed that he promptly did so.

We now conditionally issue a writ of mandamus directing Judge Daggett to vacate that portion of his April 15, 1993, order by which he ordered relator to pay $19,000 in interim attorneys' fees to Heap's attorney; and also that portion of his April 20, 1993, order by which he prohibited relator from conducting further discovery and struck relator's motion to modify. As before, we are confident that respondent will vacate the specified portions of his orders. The writ will issue only if he does not.

---

the opportunity to supersede the judgment and perfect the appeal. 811 S.W.2d at 929. Here, the interim attorneys' fees awards were not sanctions imposed for discovery abuse, of course; the sanctions, nonmonetary in nature, came later, in response to Saxton's failure to pay the interim fee awards themselves. Nevertheless, the interim fee awards themselves raised that same real possibility of which the *Braden* court spoke, and

to defer their payment until rendition of final judgment was impractical, because it would defeat their purpose. Without such a deferment, an appeal affords an inadequate remedy with respect to large interim fee awards, for the same reasons it is an inadequate remedy where a severe monetary sanction is imposed without such a deferment.