TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-12-00154-CV






In re Christopher Rogers






ORIGINAL PROCEEDING FROM TRAVIS COUNTY





O P I N I O N



 Relator Christopher Rogers has filed a petition for writ of mandamus seeking
relief from a temporary order of the district court that he pay interim attorney's fees of $20,000
to Real Party in Interest Amy Rogers's attorney. For the reasons explained below, we will
conditionally grant relief.


FACTUAL AND PROCEDURAL BACKGROUND

 Christopher and Amy Rogers divorced in 2009. There were three minor children of
the marriage, and the decree appointed Christopher and Amy joint managing conservators and
ordered Christopher to pay child support. (1) In 2011, Amy filed the underlying suit seeking to modify
the parent-child relationship. The record before us does not indicate the specific modification Amy
sought, but the suit appears to have been precipitated by an incident or incidents occurring when
Christopher was allegedly intoxicated. Amy requested and was granted a temporary restraining
order against Christopher that, among other things, limited Christopher's access to the children to
supervised visitation. Christopher filed a counter-petition to modify the parent-child relationship,
seeking sole-managing conservatorship of the children for himself and supervised visitation for Amy.
With his petition, Christopher demanded a jury trial.

 After numerous discovery requests and motions by Christopher, including various
motions regarding the district court's temporary orders and three contempt requests, Amy filed
a motion seeking interim attorney's fees under section 105.001 of the family code. See Tex. Fam.
Code Ann. § 105.001(a)(5) (West 2008) (allowing court to issue temporary order for attorney's fees
"for the safety and welfare of the child"). Amy requested $30,000 to cover what she asserted would
be the reasonable and necessary fees and expenses she would incur responding to future discovery
and preparing for and conducting the jury trial. She asserted that the fees were necessary to protect
the "safety and welfare" of the children. After an evidentiary hearing at which Christopher, Amy,
and Amy's attorney testified regarding the requested attorney's fees, the district court granted Amy's
motion and ordered Christopher to pay $20,000 to Amy's attorney, finding that the fees were
"necessary for the safety and welfare of the children and to protect their safety and welfare." (2) It is
from this interim order that Christopher seeks mandamus relief.


STANDARD OF REVIEW

 We may issue a writ of mandamus to correct a trial court's "clear abuse of
discretion" or violation of duty imposed by law where no "adequate" remedy by appeal exists. See
Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992). A clear abuse of discretion occurs when the
trial court's decision is so arbitrary and capricious that it amounts to clear error. See id. "A
trial court has no 'discretion' in determining what the law is or applying the law to the facts. Thus,
a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of
discretion, and may result in appellate reversal by extraordinary writ." Id. at 840. Further, legal and
factual sufficiency challenges to the evidence are relevant factors in assessing whether the trial court
abused its discretion. See Zeifman v. Michels, 212 S.W.3d 582, 587 (Tex. App.--Austin 2006,
pet. denied) (citing In re D.M., 191 S.W.3d 381, 393 (Tex. App.--Austin 2006, pet. denied); Dunn
v. Dunn, 177 S.W.3d 393, 396 (Tex. App.--Houston [1st Dist.] 2005, pet. denied)). Thus where,
as here, an abuse-of-discretion standard applies, we must engage in a two-pronged inquiry, asking
(1) whether the trial court had sufficient information on which to exercise its discretion; and, if so,
(2) whether the trial court erred in its application of discretion based on that information. See id.
at 587-88. Assuming a clear abuse of discretion in a temporary order in a suit affecting the parent-child relationship, mandamus may lie on the basis that there are no appellate remedies that are
considered adequate. See Tex. Fam. Code Ann. § 105.001(e) ("Temporary orders rendered under
this section are not subject to interlocutory appeal."); Little v. Dagget, 858 S.W.2d 368, 369
(Tex. 1993) (orig. proceeding) (holding that mandamus was appropriate remedy because temporary
order granting visitation is not appealable).


ANALYSIS

 Christopher argues that the district court abused its discretion in ordering him to pay
interim attorney's fees because there is no evidence that the fees were necessary for the safety and
welfare of the children. In the alternative, Christopher challenges the district court's order on the
grounds that he does not have the financial means to pay the ordered amount.

 Section 105.001(a)(5) of the family code provides that, "In a suit [affecting the parent-child relationship], the court may make a temporary order, including the modification of a temporary
prior order, for the safety and welfare of the child, including an order . . . for payment of
reasonable attorney's fees and expenses." Tex. Fam. Code Ann. § 105.001(a)(5) (emphasis added).
Section 105.001(a)(5) does not authorize a trial court to make a temporary order for payment of
attorney's fees "for a purpose other than the safety and welfare of the child." See Saxton v. Daggett,
864 S.W.2d 729, 736 (Tex. App.--Houston [1st Dist.] 1993, no pet.) (emphasis in original)
(reviewing prior version of family code section 105.001(a)(5)); see also In re Sartain, No. 01-07-00920-CV, 2008 WL 920664, at * 2 (Tex. App.--Houston [1st Dist.] Apr. 3, 2008, no pet.)
(mem. op.) (holding same for family code section 105.001(a)(5)). Thus, a party seeking a temporary
order for attorney's fees under section 105.001(a)(5), such as Amy in this case, has the burden of
showing that the requested temporary order--e.g., to pay attorney's fees--is necessary for the safety
and welfare of the children. See Saxton, 864 S.W.2d at 737 (granting mandamus based on lack of
evidence that fees were necessary for safety and welfare of the children); In re Sartain, 2008 WL
920664, at *2 n.2 (noting that party requesting interim fees had burden of proof).

 Amy offered her own and her attorney's testimony as evidence in support of her
request for interim attorney's fees. Amy's attorney, Terry Weeks, testified that Amy was seeking
attorney's fees "because there is a . . . jury demand in this case and it's going to be expensive for her
to try the case . . . [a]nd the case is an unusually acrimonious and contentious case." Weeks offered
his qualifications and estimated that preparing for and conducting the jury trial in this case would
require $24,000 of his time, taking into account the usual amount of work a jury trial requires,
including discovery and preparation, and also considering Christopher's contentious stance in
the case. Weeks asserted that Christopher has the money to pay the interim attorney's fees, and he
argued that the temporary order for attorney's fees was necessary because the Rogers children were
"under assault," meaning that Christopher does not visit them as often as he is allowed and that he
refuses to get a psychological evaluation.

 On cross-examination, however, Weeks made several concessions regarding the
necessity of the proposed interim attorney's fees to secure the safety and welfare of the Rogers
children:


 Q: And you're aware that those attorney's fees have to be to affect the safety
[and] welfare of the child, correct?

 

 A. Uh-huh, yes.

 

 Q. And the truth is, as it stands right now, the safety and welfare of the children
are adequately protected; is that correct?

 

 A. Well, we have orders in place, but the question of the safety and the welfare
of the children is going to the jury.

 

 Q. What I'm saying is, there's--there's nothing that's needed right now to affect
the safety and welfare of the children as they are currently positioned?


 A. That's right. The Judge has done pretty well by doing that.

 

 Q. And so any award of attorney's fees would be--or any award of--let me take
that back. Anything that would change the current status of the children
would be at trial, correct?

 

 A. Yes, at trial.

 

 Q. And isn't it true that the appropriate time would be at that time to make a
request for attorney's fees if there is a status in change [sic] according to
105.001?


 A. No, because you people are breaking this woman and she can't afford this.
This is the time to get hold of the case and take care of the children.

 

 Q. Let me just ask you again. Isn't it true that it would be appropriate at final
trial, if there's a status change regarding the protection of the children, that
attorney's fees will be awarded at that time, under Section 105.001?

 

 A. That's appropriate, too. But right now the children's mother needs protection
and they need protection against a frivolous jury trial.

 

 Q. Well, just to clarify . . . . [t]here's nothing about the mother's current status
or the children's current status that is in danger, correct?

 

 A. Yes, there is something.

 

 Q. And what is in danger?

 

 A. A jury trial has enormous expense that will disrupt their home and all of that.

 

 Q. I'm saying right now, as they sit here today?

 

 A. No, right now they are under the protection of this Court.



This testimony is evidence, almost in the nature of an admission, that the requested interim
attorney's fees will have no effect on the safety and welfare of the Rogers children. Although he
testifies that the jury trial will have an adverse impact on the children and that the children are "under
assault" because their father does not see them as often as he is allowed, an award of interim
attorney's fees will not affect those unfortunate situations either favorably or adversely--the trial
will presumably still occur and Christopher will remain free to interact with his children in the
manner he chooses. But more importantly, Weeks acknowledges that the temporary orders already
in place adequately protect the safety and welfare of the Rogers children and that no additional
protections are necessary before the jury trial.

 Even if we were to disregard Weeks's testimony, however, there is simply no
evidence in the record that supports the conclusion that an award of interim attorney's fees would
have an effect on the safety and welfare of the Rogers children. Amy testified extensively about
Christopher's ability to pay the interim fees and various incidents and allegations that go to the
merits of the conservatorship decision. She also discussed her job and salary and explained that, in
her opinion, Christopher's contentious litigation positions substantially increased the costs of
litigating this matter such that she was "strapped" and did not "have any extra money for anything."
But other than mentioning that she wanted to rent a house so that her children could ride bikes, she
did not testify at all regarding how her finances were affecting the children. Most importantly, she
did not explain how or even suggest that the award of interim attorney's fees were necessary for the
safety and welfare of the children. To that extent, Amy failed to satisfy her burden under family code
section 105.001(a)(5).

 Amy did, however, testify that she was saving money to rent a house, that she
had received some free legal assistance from her boyfriend and his brother, and that she has "made
arrangements to get [Weeks] some money" for attorney's fees. Thus, even if we could somehow
have otherwise inferred from the evidence in the record that she was unable in the absence of the
temporary order to move forward with her side of the litigation for financial reasons, a situation
which could be reasonably said to have an effect the safety and welfare of the children, this evidence
logically precludes us from doing so. See Saxton, 864 S.W.2d at 736 (suggesting that ability to
conduct discovery relates to safety and welfare of child because it affects trial court's decision to
modify the conservatorship in accordance with the best interests of the child); see also In re T.M.F.,
No. 09-10-00019-CV, 2010 WL 974577, at * 2 (Tex. App.--Beaumont Jan. 25, 2010, no pet.)
(mem. op.) (suggesting that "[a]lthough trial of the petition to modify the SAPCR may involve issues
relating to the safety and welfare of the children," the petitioner did not show that payment of interim
attorney's fees was necessary for the safety and welfare of the children).

 Because Amy produced no evidence supporting an award of interim attorney's fees
under section 105.001(a)(5) of the family code, it was a clear abuse of discretion for the
district court to order Christopher to pay $20,000 in attorney's fees. (3) Accordingly, we conditionally
grant Christopher Rogers's petition for writ of mandamus and direct the district court to vacate
its order compelling Christopher Rogers pay interim attorney's fees. The writ will issue only if the
district court fails to take appropriate action in accordance with this opinion. We express no opinion
regarding the ultimate merits of the parties' claims, including any request for an award of post-judgment attorney's fees.



 __________________________________________

 Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Filed: May 4, 2012
1. Given the parties' common surname, we will identify them by their first names to avoid
confusion.
2. The district court's temporary order also ordered Christopher to submit himself for
psychological evaluation, but Christopher does not contest that part of the order.
3. Having made this determination, we need not address Christopher's alternative assertion
that he lacks the financial means to pay the interim attorney's fees.