# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-12-00154-CV

In re Christopher Rogers

ORIGINAL PROCEEDING FROM TRAVIS COUNTY

# O P I N I O N

Relator Christopher Rogers has filed a petition for writ of mandamus seeking relief from a temporary order of the district court that he pay interim attorney's fees of $20,000 to Real Party in Interest Amy Rogers's attorney. For the reasons explained below, we will conditionally grant relief.

## FACTUAL AND PROCEDURAL BACKGROUND

Christopher and Amy Rogers divorced in 2009. There were three minor children of the marriage, and the decree appointed Christopher and Amy joint managing conservators and ordered Christopher to pay child support.[1] In 2011, Amy filed the underlying suit seeking to modify the parent-child relationship. The record before us does not indicate the specific modification Amy sought, but the suit appears to have been precipitated by an incident or incidents occurring when Christopher was allegedly intoxicated. Amy requested and was granted a temporary restraining order against Christopher that, among other things, limited Christopher's access to the children to

---

[1] Given the parties' common surname, we will identify them by their first names to avoid confusion.

supervised visitation. Christopher filed a counter-petition to modify the parent-child relationship, seeking sole-managing conservatorship of the children for himself and supervised visitation for Amy. With his petition, Christopher demanded a jury trial.

After numerous discovery requests and motions by Christopher, including various motions regarding the district court's temporary orders and three contempt requests, Amy filed a motion seeking interim attorney's fees under section 105.001 of the family code. *See* Tex. Fam. Code Ann. § 105.001(a)(5) (West 2008) (allowing court to issue temporary order for attorney's fees "for the safety and welfare of the child"). Amy requested $30,000 to cover what she asserted would be the reasonable and necessary fees and expenses she would incur responding to future discovery and preparing for and conducting the jury trial. She asserted that the fees were necessary to protect the "safety and welfare" of the children. After an evidentiary hearing at which Christopher, Amy, and Amy's attorney testified regarding the requested attorney's fees, the district court granted Amy's motion and ordered Christopher to pay $20,000 to Amy's attorney, finding that the fees were "necessary for the safety and welfare of the children and to protect their safety and welfare."[2] It is from this interim order that Christopher seeks mandamus relief.

**STANDARD OF REVIEW**

We may issue a writ of mandamus to correct a trial court's "clear abuse of discretion" or violation of duty imposed by law where no "adequate" remedy by appeal exists. *See Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). A clear abuse of discretion occurs when the

---

[2] The district court's temporary order also ordered Christopher to submit himself for psychological evaluation, but Christopher does not contest that part of the order.

trial court's decision is so arbitrary and capricious that it amounts to clear error. *See id.* "A trial court has no 'discretion' in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ." *Id.* at 840. Further, legal and factual sufficiency challenges to the evidence are relevant factors in assessing whether the trial court abused its discretion. *See Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied) (citing *In re D.M.*, 191 S.W.3d 381, 393 (Tex. App.—Austin 2006, pet. denied); *Dunn v. Dunn*, 177 S.W.3d 393, 396 (Tex. App.—Houston [1st Dist.] 2005, pet. denied)). Thus where, as here, an abuse-of-discretion standard applies, we must engage in a two-pronged inquiry, asking (1) whether the trial court had sufficient information on which to exercise its discretion; and, if so, (2) whether the trial court erred in its application of discretion based on that information. *See id.* at 587-88. Assuming a clear abuse of discretion in a temporary order in a suit affecting the parent-child relationship, mandamus may lie on the basis that there are no appellate remedies that are considered adequate. *See* Tex. Fam. Code Ann. § 105.001(e) ("Temporary orders rendered under this section are not subject to interlocutory appeal."); *Little v. Dagget*, 858 S.W.2d 368, 369 (Tex. 1993) (orig. proceeding) (holding that mandamus was appropriate remedy because temporary order granting visitation is not appealable).

## ANALYSIS

Christopher argues that the district court abused its discretion in ordering him to pay interim attorney's fees because there is no evidence that the fees were necessary for the safety and

3

welfare of the children. In the alternative, Christopher challenges the district court's order on the grounds that he does not have the financial means to pay the ordered amount.

Section 105.001(a)(5) of the family code provides that, "In a suit [affecting the parent-child relationship], the court may make a temporary order, including the modification of a temporary prior order, *for the safety and welfare of the child*, including an order . . . for payment of reasonable attorney's fees and expenses." Tex. Fam. Code Ann. § 105.001(a)(5) (emphasis added). Section 105.001(a)(5) does not authorize a trial court to make a temporary order for payment of attorney's fees "for a purpose *other than* the safety and welfare of the child." *See Saxton v. Daggett*, 864 S.W.2d 729, 736 (Tex. App.—Houston [1st Dist.] 1993, no pet.) (emphasis in original) (reviewing prior version of family code section 105.001(a)(5)); *see also In re Sartain*, No. 01-07-00920-CV, 2008 WL 920664, at * 2 (Tex. App.—Houston [1st Dist.] Apr. 3, 2008, no pet.) (mem. op.) (holding same for family code section 105.001(a)(5)). Thus, a party seeking a temporary order for attorney's fees under section 105.001(a)(5), such as Amy in this case, has the burden of showing that the requested temporary order—e.g., to pay attorney's fees—is necessary for the safety and welfare of the children. *See Saxton*, 864 S.W.2d at 737 (granting mandamus based on lack of evidence that fees were necessary for safety and welfare of the children); *In re Sartain*, 2008 WL 920664, at *2 n.2 (noting that party requesting interim fees had burden of proof).

Amy offered her own and her attorney's testimony as evidence in support of her request for interim attorney's fees. Amy's attorney, Terry Weeks, testified that Amy was seeking attorney's fees "because there is a . . . jury demand in this case and it's going to be expensive for her to try the case . . . [a]nd the case is an unusually acrimonious and contentious case." Weeks offered his qualifications and estimated that preparing for and conducting the jury trial in this case would

4

require $24,000 of his time, taking into account the usual amount of work a jury trial requires, including discovery and preparation, and also considering Christopher's contentious stance in the case. Weeks asserted that Christopher has the money to pay the interim attorney's fees, and he argued that the temporary order for attorney's fees was necessary because the Rogers children were "under assault," meaning that Christopher does not visit them as often as he is allowed and that he refuses to get a psychological evaluation.

On cross-examination, however, Weeks made several concessions regarding the necessity of the proposed interim attorney's fees to secure the safety and welfare of the Rogers children:

Q:  And you're aware that those attorney's fees have to be to affect the safety [and] welfare of the child, correct?

A.  Uh-huh, yes.

Q.  And the truth is, as it stands right now, the safety and welfare of the children are adequately protected; is that correct?

A.  Well, we have orders in place, but the question of the safety and the welfare of the children is going to the jury.

Q.  What I'm saying is, there's—there's nothing that's needed right now to affect the safety and welfare of the children as they are currently positioned?

A.  That's right. The Judge has done pretty well by doing that.

Q.  And so any award of attorney's fees would be—or any award of—let me take that back. Anything that would change the current status of the children would be at trial, correct?

A.  Yes, at trial.

Q. And isn't it true that the appropriate time would be at that time to make a request for attorney's fees if there is a status in change [sic] according to 105.001?

A. No, because you people are breaking this woman and she can't afford this. This is the time to get hold of the case and take care of the children.

Q. Let me just ask you again. Isn't it true that it would be appropriate at final trial, if there's a status change regarding the protection of the children, that attorney's fees will be awarded at that time, under Section 105.001?

A. That's appropriate, too. But right now the children's mother needs protection and they need protection against a frivolous jury trial.

Q. Well, just to clarify . . . . [t]here's nothing about the mother's current status or the children's current status that is in danger, correct?

A. Yes, there is something.

Q. And what is in danger?

A. A jury trial has enormous expense that will disrupt their home and all of that.

Q. I'm saying right now, as they sit here today?

A. No, right now they are under the protection of this Court.

This testimony is evidence, almost in the nature of an admission, that the requested interim attorney's fees will have no effect on the safety and welfare of the Rogers children. Although he testifies that the jury trial will have an adverse impact on the children and that the children are "under assault" because their father does not see them as often as he is allowed, an award of interim attorney's fees will not affect those unfortunate situations either favorably or adversely—the trial will presumably still occur and Christopher will remain free to interact with his children in the manner he chooses. But more importantly, Weeks acknowledges that the temporary orders already

6

in place adequately protect the safety and welfare of the Rogers children and that no additional protections are necessary before the jury trial.

Even if we were to disregard Weeks's testimony, however, there is simply no evidence in the record that supports the conclusion that an award of interim attorney's fees would have an effect on the safety and welfare of the Rogers children. Amy testified extensively about Christopher's ability to pay the interim fees and various incidents and allegations that go to the merits of the conservatorship decision. She also discussed her job and salary and explained that, in her opinion, Christopher's contentious litigation positions substantially increased the costs of litigating this matter such that she was "strapped" and did not "have any extra money for anything." But other than mentioning that she wanted to rent a house so that her children could ride bikes, she did not testify at all regarding how her finances were affecting the children. Most importantly, she did not explain how or even suggest that the award of interim attorney's fees were necessary for the safety and welfare of the children. To that extent, Amy failed to satisfy her burden under family code section 105.001(a)(5).

Amy did, however, testify that she was saving money to rent a house, that she had received some free legal assistance from her boyfriend and his brother, and that she has "made arrangements to get [Weeks] some money" for attorney's fees. Thus, even if we could somehow have otherwise inferred from the evidence in the record that she was unable in the absence of the temporary order to move forward with her side of the litigation for financial reasons, a situation which could be reasonably said to have an effect the safety and welfare of the children, this evidence logically precludes us from doing so. *See Saxton*, 864 S.W.2d at 736 (suggesting that ability to conduct discovery relates to safety and welfare of child because it affects trial court's decision to

7

modify the conservatorship in accordance with the best interests of the child); *see also In re T.M.F.*, No. 09-10-00019-CV, 2010 WL 974577, at * 2 (Tex. App.—Beaumont Jan. 25, 2010, no pet.) (mem. op.) (suggesting that "[a]lthough trial of the petition to modify the SAPCR may involve issues relating to the safety and welfare of the children," the petitioner did not show that payment of interim attorney's fees was necessary for the safety and welfare of the children).

Because Amy produced no evidence supporting an award of interim attorney's fees under section 105.001(a)(5) of the family code, it was a clear abuse of discretion for the district court to order Christopher to pay $20,000 in attorney's fees.[3] Accordingly, we conditionally grant Christopher Rogers's petition for writ of mandamus and direct the district court to vacate its order compelling Christopher Rogers pay interim attorney's fees. The writ will issue only if the district court fails to take appropriate action in accordance with this opinion. We express no opinion regarding the ultimate merits of the parties' claims, including any request for an award of post-judgment attorney's fees.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Filed: May 4, 2012

---

[3] Having made this determination, we need not address Christopher's alternative assertion that he lacks the financial means to pay the interim attorney's fees.