ACCEPTED
04-15-00613-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
9/30/2015 3:55:23 PM
KEITH HOTTLE
CLERK

**NO.** __04-15-0061__3-CV

_____

IN RE LAWRENCE SHIPLEY III

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

9/30/2015 3:55:23 PM

KEITH E. HOTTLE
Clerk

From the 166th District Court
Bexar County, Texas
*Cause* No. 2012-CI-13421
*In the Interest of L.N.S., a Minor Child*

# PETITION FOR WRIT OF MANDAMUS

MICHAEL A. STOCKER
State Bar No. 19257500
mike@stockerfamilylaw.com
55 Waugh Drive, suite 605
Houston, Texas 77007
Telephone: 713.862.3800
Telecopier: 713.869.2088

CHRIS H. NEGEM
State Bar No. 14865480
chris@negemlawfirm.com
LAW OFFICES OF CHRIS H. NEGEM
8620 N. New Braunfels, Suite 105
San Antonio, Texas 78217
Telephone: 210.226.1200
Telecopier: 210.798.2654

ROBINSON C. RAMSEY
State Bar No. 16523700
rramsey@langleybanack.com
CATHERINE M. STONE
State Bar No. 19286000
cstone@langleybanack.com
LANGLEY & BANACK, INC.
745 E. Mulberry, Suite 900
San Antonio, Texas 78212
Telephone: 210.736.6600
Telecopier: 210.735.6889

ATTORNEYS FOR RELATOR

**RELATOR REQUESTS ORAL ARGUMENT
AND EMERGENCY TEMPORARY RELIEF\***

**\*See Relator's Motion for Emergency Temporary Relief filed concurrently with this petition.**

# IDENTIFICATION OF PARTIES AND COUNSEL

**Relator**:                    Lawrence Shipley III

Trial Attorneys:       Michael A. Stocker
55 Waugh Drive, suite 605
Houston, Texas  77007

Chris H. Negem
Jessica Bartlett
LAW OFFICES OF CHRIS H. NEGEM
8620 N. New Braunfels, Suite 105
San Antonio, Texas 78217

Appellate Attorneys:   Robinson C. Ramsey
Catherine M. Stone
LANGLEY & BANACK, INC.
745 E. Mulberry, Suite 900
San Antonio, Texas  78212

Michael A. Stocker
55 Waugh Drive, suite 605
Houston, Texas  77007

Chris H. Negem
LAW OFFICES OF CHRIS H. NEGEM
8620 N. New Braunfels, Suite 105
San Antonio, Texas 78217

**Respondent:**          Hon. Stephani A. Walsh
45th Judicial District Court
100 Dolorosa
San Antonio, Texas  78205

**Real Party
In Interest**             Andrea Vasquez

Trial Attorney         Jason S. Bashara
LAW OFFICES OF JASON S. BASHARA
111 Soledad, Suite 1800
San Antonio, Texas  78205

# TABLE OF CONTENTS

IDENTIFICATION OF PARTIES AND COUNSEL.................................................2

TABLE OF CONTENTS.................................................................................3

INDEX OF AUTHORITIES .............................................................................4

STATEMENT OF THE CASE............................................................................7

STATEMENT OF JURISDICTION.....................................................................8

ISSUES PRESENTED ....................................................................................8

    ISSUE ONE...............................................................................................8

        Ms. Vasquez did not meet her burden to prove that additional interim attorney's fees were necessary for the safety and welfare of the child.

    ISSUE TWO ..............................................................................................8

        The trial court's temporary orders constitute an impermissible equalization of interim attorneys' fees.

    ISSUE THREE............................................................................................8

        The amount of attorney's fees is unreasonable and unnecessary because it is based on the work of the opposing attorneys rather than the attorney who is to receive payment.

STATEMENT OF FACTS.................................................................................9

ARGUMENT...............................................................................................13

    **I.**      Mandamus can correct a court's clear abuse of discretion in the absence of an adequate appellate remedy. ....................................13

    **II.**     Mandamus is available to correct temporary child-support orders because they are not appealable. .......................................15

**III.** Ms. Vasquez did not prove that interim attorney's fees are necessary for the child's safety and welfare. ...................16

**IV.** The award of interim attorney's fees under section 105.001(a)(5) is not intended to "level the playing field." ......................... 23

**V.** The fee amount is unreasonable and unnecessary because it is not based on the receiving attorney's fees. ........................... 24

TEMPORARY RELIEF ................................................................ 26

APPENDIX .................................................................................. 26

RECORD ...................................................................................... 27

PRAYER ...................................................................................... 27

CERTIFICATION ...................................................................... 28

CERTIFICATE OF COMPLIANCE ........................................ 28

CERTIFICATE OF SERVICE .................................................. 29

APPENDIX .................................................................................. 30

A.    Reporter's Record: Temporary Hearing (September 16, 2015)

B.    Judge's Notes: Temporary Hearing (September 16, 2015)

C.    TEX. CONST. art. V, § 6

D.    TEX. FAM. CODE ANN. § 105.001 (West 2014)

E.    TEX. GOV'T CODE ANN. § 22.221 (West 2004)

4

# INDEX OF AUTHORITIES

## Cases

*Bloom v. Bloom*, 767 S.W.2d 463 (Tex. App.—San Antonio 1989, writ denied) .......................................................................................... 18

*Brooks v. Brooks*, 480 S.W.2d 463 (Tex. Civ. App.—Eastland 1972, no writ) ................................................................................................ 25

*Cain v. Bain*, 709 S.W.2d 175 (Tex. 1986) .................................................. 14

*Carson v. Carson*, 528 S.W.2d 308 (Tex. Civ. App.—Waco 1975, no writ) .............................................................................................. 25

*City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005) ................................ 14

*Dancy v. Daggett*, 815 S.W.2d 548 (Tex. 1991) (orig. proceeding) .............. 15

*In re Rogers*, 370 S.W.3d 443 (Tex. App.—Austin 2012, orig. proceeding) ................................................................................ passim

*In re Sartain*, No. 01-07-00920-CV, 2008 WL 920664 Tex. App.—Houston [1st Dist.] Apr. 3, 2008, orig. proceeding) (mem. op.) ................................................................................... passim

*MCI Telecommunications Corp. v. Crowley*, 899 S.W.2d 399 (Tex. App.—Fort Worth 1995, orig. proceeding) ..................................... 25

*Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 161 S.W.3d 531 (Tex. App.—San Antonio 2004, pet. denied) .......................................... 19

*Saxton v. Daggett*, 864 S.W.2d 729 (Tex. App.—Houston [1st Dist.] 1993, orig. proceeding) ......................................... 16, 21, 23, 24

*T.M.F.*, No. 09-10-00019-CV, 2010 WL 974577 (Tex. App.—Beaumont Jan. 25, 2010, orig. proceeding) (mem. op.) ................................................................................... passim

*U.S. Gov't v. Marks*, 949 S.W.2d 320 (Tex. 1997) ................................ 15, 18

*Walker v. Packer*, 827 S.W.2d 833 (Tex. 1992) (orig. proceeding) ............ 13

## Constitutional Provisions

TEX. CONST. art. V, § 6 .................................................................................... 9

## Statutes

TEX. FAM. CODE ANN. § 105.001 (West 2014) ....................................... passim

TEX. GOV'T CODE ANN. § 22.221 (West 2004) ............................................. 9

## Other Authorities

Becky Beaver, Leslie J. Bollier, and Michelle M. Kostun,
   *Attorneys' Fees in Family Law Proceedings,*
   38TH ADV. FAM. LAW COURSE, Ch. 23 (State Bar of Texas 2012) ............... 21

## STATEMENT OF THE CASE

**Nature of the Case.** The underlying lawsuit is a child-support-modification case in which the real party in interest sought additional temporary attorney's fees from the relator pending the final outcome of the proceeding. *MR 1, 12, 21.*[1]

**Respondent Judge.** The respondent is Hon. Stephani A. Walsh, presiding judge of the 45th District Court, Bexar County, Texas. This proceeding arises out of a cause pending in the 166th District Court, Judge Laura Salinas presiding; however, Judge Walsh rendered the temporary orders of which Relator complains. *MR 1 at 38-40.*[2]

**Relief Sought.** The relator seeks relief from the trial judge's temporary orders requiring the relator to pay additional interim attorney's fees to the real party in interest. *MR 1 at 38-40.*

---

[1] "*MR ___*" − Mandamus Record Tab Number.

[2] The trial court has not yet signed the temporary orders; however, a hearing on a motion to sign them is set for October 6, 2015. *MR 1 at 42.* Relator will supplement the mandamus record with the signed temporary orders when they become available.

# STATEMENT OF JURISDICTION

This court has jurisdiction to issue "all writs of mandamus, agreeable to the principles of law regulating those writs, against a … judge of a district … court in the court of appeals district." TEX. GOV'T CODE ANN. § 22.221(b)(1) (West 2004); *see also* TEX. CONST. art. V, § 6 (providing that courts of appeals "shall have appellate jurisdiction co-extensive with the limits of their respective districts, which shall extend to all cases of which the District Courts or County Courts have original or appellate jurisdiction").

# ISSUES PRESENTED

## ISSUE ONE
### (Attorney's Fees Award)

Ms. Vasquez did not meet her burden to prove that additional interim attorney's fees were necessary for the safety and welfare of the child.

## ISSUE TWO
### (Attorneys' Fees Equalization)

The trial court's temporary orders constitute an impermissible equalization of interim attorneys' fees.

## ISSUE THREE
### (Attorney's Fees Amount)

The amount of attorney's fees is unreasonable and unnecessary because it is based on the work of the opposing attorneys rather than the attorney who is to receive payment.

## STATEMENT OF FACTS

"Focus on safety and welfare," the trial court told Ms. Vasquez's attorney at the hearing on her request for additional interim attorney's fees. "[Y]ou must present evidence concerning the safety and welfare of the child." *MR 1 at 18.*

But the only evidence Ms. Vasquez presented was her own attorney's testimony and another judge's prior temporary orders, which had already awarded her $10,000 in interim attorney's fees. *MR 1 at 5-9; MR 12.*

"[W]hat happened to the $10,000?" the judge asked. *MR 1 at 10.*

"That's a great question," Ms. Vasquez's attorney acknowledged. *MR 1 at 10.*

But Ms. Vasquez never answered it. In fact, she never answered any questions. *MR 1 at 22-28.* The only witness was her attorney, whose testimony consisted solely of his qualifications, his estimate of the time and tasks it would take to complete the case, and his opinion that his hourly rate and representation were reasonable and necessary. *MR 1 at 22-26.*

Although Ms. Vasquez's attorney argued that additional interim attorney's fees were necessary for the child's welfare, he provided no supporting proof—only assertions, which Mr. Shipley's attorneys disputed. *MR 1 at 9, 12-21, 30-32, 37.*

9

For example, in his opening statement, Ms. Vasquez's attorney told the trial court that this matter "in essence is an above-guideline-child-support case," and, therefore, that the amount of Mr. Shipley's earnings went "to the very heart of this case." *MR 1 at 18-19.* He then complained that he was "going to have to do some work" because Mr. Shipley's attorney had objected to a discovery request for 1099 forms W-2 statements." *MR 1 at 10.* He admitted, however, that he was "playing a bit of catchup at this point" and that he had not yet been able to obtain her entire file from her previous attorney. *MR 1 at 11, 22.*

"[M]aybe [he] hasn't gotten to it yet," said Mr. Shipley's attorney, "[but] all of the income documents ... have been produced. ... We've been producing them by agreement." *MR 1 at 37.*

Ms. Vasquez's attorney then argued that "[t]he welfare of the child deals with her education" and that Mr. Shipley had not paid the child's private-school tuition—another unsupported assertion that his attorneys disputed. *MR 1 at 18, 22-28, 37.*

"Mr. Shipley, although not obligated to do it," his attorney responded, "has been paying, by choice, one hundred percent of the [school] tuition, expenses, and including the uniforms. So he's not a guy that is running from his obligations, as [Ms. Vasquez's attorney] may want to suggest to the Court." *MR 1 at 37.*

10

In any event, Ms. Vasquez presented no evidence that "the education of the child" or "the child's minimum needs," which her attorney equated to "the welfare of the child," were not being met. *MR 1 at 19, 22-28.*

Furthermore, there was no evidence that if the trial court did not order Mr. Shipley to pay Ms. Vasquez's additional interim attorney's fees she would lose her legal representation or that the child's safety and welfare would suffer in any way. *MR 1 at 22-28.*

"Bottom line," the trial judge observed, "it's a child support case." *MR 1 at 33.*

But at the bottom of that same line, Ms. Vasquez offered no evidence, nor did she even assert, that Mr. Shipley had not been paying the court-ordered temporary child support—only that she wanted more. *MR 1 at 22-28; MR 10.*

Nevertheless, the trial court granted Ms. Vasquez's request for additional interim attorney's fees—in fact, the judge ordered more than the approximately $21,350 her attorney sought. *MR 1 at 27, 38-39.*

"The Court's going to order $10,000," said the judge. "And the Court is going to order additional attorney's fees monthly on an hourly basis at $350 an hour and an equalization manner." *MR 1 at 38-39.*

The manner of that "equalization" consisted of requiring Mr. Shipley to pay Ms. Vasquez's attorney at his hourly rate for the same number of hours that his attorneys—not hers—worked. *MR 1 at 39.*

"So if you spend 20 hours between the two of you," the judge explained, "then you owe [her attorney] 20 hours." *MR 1 at 39.*

"[J]ust so we understand," Mr. Shipley's attorney asked, "$10,000 in interim fees and in addition to that an equalization?" *MR 1 at 39.*

"When that runs out," the judge confirmed, "when he uses his—28 hours is what I have gone with—when he uses up his 28 hours, you should have 28 hours on that side, and from then on we will be equal." *MR 1 at 39.*

In fashioning that fee arrangement, the judge said she had "focus[ed] on the words 'safety' and 'welfare.'" *MR 1 at 34.* But there was no evidence of any effect on the child's safety and welfare—only arguments. *MR 1 at 18, 22-28, 37.* Therefore, Mr. Shipley filed this mandamus action challenging the validity of that interim ruling.

## ARGUMENT

### I. Mandamus can correct a court's clear abuse of discretion in the absence of an adequate appellate remedy.

An appellate court may issue a writ of mandamus "to correct a trial court's 'clear abuse of discretion' or violation of duty imposed by law where no 'adequate' remedy by appeal exists." *In re Rogers*, 370 S.W.3d 443, 445 (Tex. App.—Austin 2012, orig. proceeding) (citing *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding)).

"A trial court has no 'discretion' in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ." *Rogers*, 370 S.W.3d at 445 (citing *Walker*, 933 S.W.2d at 840); *see also In re Sartain*, No. 01-07-00920-CV, 2008 WL 920664, at *1 (Tex. App.—Houston [1st Dist.] Apr. 3, 2008, orig. proceeding) (mem. op.) ("A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.").[3]

An abuse of discretion occurred here when the trial court ordered interim attorney's fees in an attempt to "level the playing field" between the parents, rather than to protect the safety and welfare of the child, as

---

[3] All internal citations and quotations omitted throughout this petition unless otherwise noted.

13

required by the statute authorizing such fees. TEX. FAM. CODE ANN. § 105.001(e)(5) (West 2014). Furthermore, the trial court arbitrarily tied the payment of those fees to the hours billed by the attorneys for the father, rather than the attorney for the mother, who was the one seeking the fees. *MR 1 at 38-39.*

In determining whether a trial court abused its discretion, "legal and factual sufficiency challenges to the evidence are relevant factors." *Rogers*, 370 S.W.3d at 445; *see also City of Keller v. Wilson*, 168 S.W.3d 802, 830 (Tex. 2005) (holding that evidence is legally insufficient if, "[c]rediting all favorable evidence that reasonable [factfinders] could believe and disregarding all contrary evidence except that which they could not ignore," there is no evidence to support the judgment); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (holding that under a factual-sufficiency standard of review a judgment is reversible if, considering and weighing all the evidence, the judgment is "clearly wrong and unjust" because it is "contrary to the overwhelming weight of the evidence").

In factoring legal- and factual-sufficiency considerations into the abuse-of-discretion analysis, appellate courts "must engage in a two-pronged inquiry, asking (1) whether the trial court had sufficient information on which to exercise its discretion; and, if so, (2) whether the

14

trial court erred in its application of discretion based on that information." *Rogers*, 370 S.W.3d at 445.

Both prongs of the abuse-of-discretion test are missing here: not only was there no evidence, or, alternatively, factually insufficient evidence, to support the judge's ruling, she misapplied the little information that she had. That information consisted solely of testimony from the mother's attorney concerning his fees, with no evidence—only arguments—about the child's safety and welfare. *MR 1 22-28, 38-39*; *see U.S. Gov't v. Marks*, 949 S.W.2d 320, 326 (Tex. 1997) (holding that "an attorney's unsworn statements are not evidence").

## II. Mandamus is available to correct temporary child-support orders because they are not appealable.

"Assuming a clear abuse of discretion in a temporary order in a suit affecting the parent-child relationship, mandamus may lie on the basis that there are no appellate remedies that are considered adequate." *Rogers*, 370 S.W.3d at 445; *see also Dancy v. Daggett*, 815 S.W.2d 548, 549 (Tex. 1991) (holding that "mandamus [was] an appropriate remedy" because the trial court's "issuance of temporary orders is not subject to interlocutory appeal"). That is the case here, because the trial court issued interim orders for attorney's fees pursuant to section 105.001 of the Family Code, which provides: "Temporary orders rendered under this section are not subject to interlocutory appeal." TEX. FAM. CODE ANN. § 105.001(e); *see also Saxton v.*

*Daggett*, 864 S.W.2d 729, 736 (Tex. App.—Houston [1st Dist.] 1993, orig. proceeding) (holding that mandamus was "the appropriate remedy to attack the issuance of temporary orders" under the predecessor statute to section 105.001).

### III. Ms. Vasquez did not prove that interim attorney's fees are necessary for the child's safety and welfare.

Section 105.001(a)(5) provides: "In a suit [affecting the parent-child relationship], the court may make a temporary order, including the modification of a temporary prior order, for the safety and welfare of the child, including an order ... for payment of reasonable attorney's fees and expenses." TEX. FAM. CODE § 105.001(a)(5). This statute "does not authorize a trial court to make a temporary order for payment of attorney's fees 'for a purpose other than the safety and welfare of the child.'" *Rogers*, 370 S.W.3d at 445; *see also Sartain*, 2008 WL 920664, at *2 (holding same). Therefore, "a party seeking a temporary order for attorney's fees under section 105.001(a)(5), such as [Ms. Vasquez] in this case, has the burden of showing that the requested temporary order—*e.g.*, to pay attorney's fees—is necessary for the safety and welfare of the children." *Rogers*, 370 S.W.3d at 446; *see also Sartain*, 2008 WL 920664, at *2 n. 2 (confirming that that the party requesting interim attorney's fees has the burden to prove they are necessary for the safety and welfare of the children); *Saxton*, 864

16

S.W.2d at 736, 737 (granting mandamus because of the lack of evidence that interim attorney's fees were necessary for the children's safety and welfare).

In *Rogers*, the mother's attorney testified that "it's going to be expensive for her to try the case ... taking into account the usual amount of work a jury trial requires, including discovery and preparation, and also considering [the father]'s contentious stance in the case" and that the father "has the money to pay the interim attorney's fees." 370 S.W.3d at 446. The court of appeals held that those claimed circumstances, which are essentially the same as what Ms. Vasquez alleges here, were insufficient under section 105.001(a) to show "that the requested interim attorney's fees will have [an] effect on the safety and welfare" of the child. *Id.* at 446, 447; *MR 1 at 9-10* (asserting that Ms. Vasquez "does not have the ability to pay" and that Mr. Shipley "has the ability to pay," and complaining that Mr. Shipley objected to Ms. Vasquez's discovery requests).

The temporary orders here are similar to the ones in *Sartain*, where the trial court "ordered the payment of interim attorney's fees to enable real party in interest's attorney 'to conduct discovery and properly prepare for trial and to protect the best interest of the child.'" 2008 WL 920664, at *2. There, the trial court "heard no evidence and, therefore, could not have heard any evidence that the attorney's fees were needed for the safety and

17

welfare of the child." *Id.* Here, although the trial court heard testimony from Ms. Vasquez's attorney concerning the representation he intended to provide and the estimated time and amounts he would log and charge for his services, the judge heard no evidence—only arguments—that the requested interim fees were necessary to protect the safety and welfare of the child. *MR 1 at 9, 12-28, 30-32, 37; see U.S. Gov't v. Marks*, 949 S.W.2d 320, 326 (Tex. 1997) (holding that "an attorney's unsworn statements are not evidence"); *Bloom v. Bloom*, 767 S.W.2d 463, 471 (Tex. App.—San Antonio 1989, writ denied) (holding that, although an attorney "is an officer of the court ... the unsworn statement by the attorney does not constitute evidence").

After hearing Mr. Vasquez's attorney's arguments, the trial judge reminded him that "you must present evidence concerning the safety and welfare of the child." *MR 1 at 18.* But the only testimony he gave related to his services and charges, not to the child's safety and welfare. *MR 1 at 22-28.*

Ms. Vasquez insinuates that the first temporary order finding that interim attorney's fees in the amount of $10,000 were in the child's "best interest" constitutes *carte blanche* authority to increase that amount later without proving that the additional fees are necessary for the "safety and welfare" of the child at the time of the requested increase. *MR 1 at 6.* But

section 105.001(a)(5) requires sufficient proof at the time of the request, not at some other time—in this case three years—in the past. *See T.M.F.*, 2010 WL 974577, at *2 (requiring proof of an "immediate threat to the health and safety" to support an award of interim attorney' fees under section 105.001(a)(5)).[4]

Here, instead of an "immediate threat to the health and safety" of the child to justify temporary attorney's fees, the trial court focused on the issues to be resolved at the final trial. *MR 1 at 33.*

"Why isn't this set for trial and done," the judge asked. "This case needs to be finished and concluded ..." *MR 1 at 33, 35.*

It had been three years since the first temporary hearing, which resulted in an award of interim attorney's fees to Ms. Vasquez. *MR at 12.* Furthermore, the first trial judge did not award those fees based on the child's "safety and welfare," but rather based on "best interest." *MR 3, 12.* And even hypothetically assuming that "best interest" could equate to

---

[4] Although the judge judicially noticed the prior temporary orders themselves and the partial reporter's record of the rendition of those orders, neither party offered any testimony or exhibits from that hearing. *MR 1 at 5-9*; *see T.M.F.,* No. 09-10-00019-CV, 2010 WL 974577, at *1 (Tex. App.—Beaumont Jan. 25, 2010, orig. proceeding) (mem. op.) ("Although counsel asked the trial court to take judicial notice of the earlier hearings in the case, he did not supply the trial court with the particular facts to be noticed and the trial court did not state that judicial notice was being taken of any particular facts adduced at a prior hearing."); *Paradigm Oil, Inc. v. Retamco Operating, Inc.,* 161 S.W.3d 531, 539–40 (Tex. App.—San Antonio 2004, pet. denied) ("[T]he trial court cannot take judicial notice of testimony from a previous proceeding at a subsequent proceeding unless the testimony is admitted into evidence at the subsequent proceeding.").

"safety and welfare," any alleged "immediate threat to the health and safety of the child[] had been met by the [previous] temporary orders …" *See T.M.F.,* 2010 WL 974577, at \*2.

The prior temporary orders awarding interim attorney's fees neither found nor demonstrated "any immediate threat to the health and safety" of the child at this time. *MR 3, 12*; *see T.M.F.,* 2010 WL 974577, at \*2. Furthermore, to justify interim attorney's fees, that alleged threat would have to exist "at the time of the request," not three years before. *See* Becky Beaver, Leslie J. Bollier, and Michelle M. Kostun, *Attorneys' Fees in Family Law Proceedings,* 38TH ADV. FAM. LAW COURSE, Ch. 23, p. 2 (State Bar of Texas 2012) (citing *Rogers,* 2012 WL 1581374, at \*2).

Like the mother in *T.M.F.*, Ms. Vasquez's motion for additional interim fees "sought to accomplish nothing more than to require that [Mr. Shipley] finance [her] allegations that the SAPCR should be modified." 2010 WL 974577, at \*2. That is confirmed by the fact that "the only evidence in the record is that the fees were being sought solely to address the [alleged] disparity in the relative wealth of the parties." *Id.*; *MR 1 at 38-39; see also Sartain,* 2008 WL 920664, at \*2 (holding that an order for interim attorney's fees "to enable real party in interest's attorney 'to conduct discovery and properly prepare for trial and to protect the best interest of the child'" exceeded the scope of section 105.001(a)(5)).

20

The perceived "best interest" of the child, not her "safety and welfare," was the basis of the trial judge's decision here. *MR 1 at 34.*

"I do believe it's necessary to determine this child's best interest," she said, "whether or not she needs to remain in private school, whether or not she gets an auto, auto insurance, any extracurricular activities, any of those things that are going to be addressed with an above-guidelines child-support argument on either side." *MR 1 at 34.*

But those "best interest" issues, which are "to be addressed" at trial, do not constitute "safety and welfare" issues that justify additional interim attorney's fees at this time. *MR 1 at 35; Sartain*, 2008 WL 920664, at *2. "It is not enough that issues presented at the final trial 'may involve issues relating to the safety and welfare of the children.' A party seeking an award of interim attorneys' fees is required to present evidence that, at the time of the request, funds are necessary to protect the safety and welfare of the children." Beaver, at p. 2 (quoting *T.M.F.*, 2010 WL 974577 at *2 and citing *Rogers*, 2012 WL 1581374, at *1).

Here, as in *Rogers*, "there is simply no evidence in the record that supports the conclusion that an award of interim attorney's fees would have an effect on the safety and welfare" of the child. 370 S.W.3d at 447; *see also Saxton*, 864 S.W.2d at 733 (granting mandamus relief where there was "no

evidence in the record that [the] interim fee payments were necessary to promote the safety and welfare of the children").

Meanwhile, not only did Ms. Vasquez not explain what happened to the original $10,000 interim-attorney's-fees award, she did not testify to any connection between the requested additional fees and the safety and welfare of the child nor to any inability to pay her attorney's fees herself. *MR 1 at 22-28.* Like the mother in *T.M.F.*, Ms. Vasquez "did not supply detailed information regarding her finances, but she was represented by [a] lawyer[] ... and evidently was able to retain counsel." 2010 WL 974577, at *2; *see also Rogers*, 447 S.W.23d at 448 (in which there was no "evidence in the record that [the mother] was unable in the absence of the temporary order to move forward with her side of the litigation for financial reasons").

In *Rogers*, the mother testified about "her job and salary" and that she was "'strapped' and did not 'have any extra money for anything.'" 370 S.W.3d at 447. But she did not testify "regarding how her finances were affecting the children." *Id.* As a result, she "failed to satisfy her burden under family code section 105.001(a)(5)." *Id.* Ms. Vasquez did not testify at all. *MR 1 at 5-38.* Therefore, the evidence level here is even lower than in *Rogers,* where there was "simply no evidence in the record that supports the conclusion that an award of interim attorney's fees would have an effect on the safety and welfare" of the children. 370 S.W.3d at 447.

22

Because the mother in *Rogers* "produced no evidence supporting an award of interim attorney's fees under section 105.001(a)(5) of the family code, it was a clear abuse of discretion for the district court to order [the father] to pay [interim] attorney's fees." Given the absence of any testimony at all from Ms. Vasquez, the abuse of discretion was even greater here. 370 S.W.3d at 448.

## IV. The award of interim attorney's fees under section 105.001(a)(5) is not intended to "level the playing field."

Section 105.001(a)(5) "does not authorize a trial court, in a suit affecting the parent-child relationship, to make a temporary order for payment of reasonable attorney's fees for a purpose *other than* the safety and welfare of the child." *Saxton*, 864 S.W.2d at 736 (emphasis in original).[5] It is emphatically not meant to fund an opposing party's lawsuit by "leveling the playing field," which is what Ms. Velasquez is trying to do. *See, e.g., Sartain*, 2008 WL 920664, at *2 (rejecting the argument that the father should pay interim attorney's fees because he "was in a better position to pay the fees" than the mother); *Saxton,* 864 S.W.2d at 736 (granting mandamus relief to overturn an order based on "an asserted need to facilitate further discovery, to 'level the playing field'").

In her effort to purportedly "level the playing field," Ms. Vasquez essentially asked one judge to overrule another judge's order that an

---

[5] Construing section 11.11(a)(5), the precursor to section 105.001(a)(5).

adequate amount of interim attorney's fees is $10,000. *MR 3, 12.* Not only is this request misplaced, it is unsupported by proof of the alleged disparity upon which she relies.

Here, as in *T.M.F.*, "it is apparent that "the fees were being sought solely to address the disparity in the relative wealth of the parties." *See T.M.F.*, 2010 WL 974577, at \*2; *MR 1 at 38-39.* That was the main theme of Ms. Vasquez's attorney's argument, although she offered no evidence of the wealth of either party. *MR 1 at 22-28.* It was also the basis for the judge's interim orders, which she made in "an equalization manner." *MR 1 at 38-39.* But this sort of litigation-expense levelling is not authorized by section 105.001(a)(5). *Sartain*, 2008 WL 920664, at \*2; *Saxon*, 864 S.W.2d at 733, 736. Therefore, "it was a clear abuse of discretion to order [the father] to pay … interim fees to [the mother]'s attorney" in an effort to "level the playing field." *Saxon*, 864 S.W.2d at 733, 736.

## V.    The fee amount is unreasonable and unnecessary because it is not based on the receiving attorney's fees.

In addition to ordering interim fees for the wrong reason, the trial court ordered them based on the wrong billing. Ms. Vasquez's attorney's request for approximately $21,000 in fees was based on the estimated 60 hours of his time he anticipated billing through trial. *MR 1 at 27-28.* But instead of ordering the fees he requested on that basis, the judge tied the award to the time and services of Mr. Shipley's attorneys, without regard to

the reasonableness and necessity of Ms. Vasquez's attorney's fees. *MR 1 at 38-39.*

Awarding Ms. Vasquez attorneys' fees based on the billings of Mr. Shipley's attorneys is not only unreasonable on its face, it sets the stage for exceeding the amount that Ms. Vasquez requested, while varying from the basis on which her attorney calculated it. *MR 1, at 27, 38-39.*

Under the trial court's formula, if Mr. Shipley's attorneys work 40 hours, but Ms. Vasquez's attorney works only 30 hours, she would receive a $3,500 windfall based on the additional 10 hours for which she is not obligated to pay. *1 MR 38-39; cf. Carson v. Carson*, 528 S.W.2d 308, 309 (Tex. Civ. App.—Waco 1975, no writ) (holding that recovery of attorney's fees in a divorce case is limited to the amount the client is obligated to pay the attorney); *Brooks v. Brooks*, 480 S.W.2d 463, 466 (Tex. Civ. App.— Eastland 1972, no writ) (holding that where "the fee awarded by the trial court exceeded the contractual arrangement by approximately $2,500" the award of was "excessive in the amount of $2,500").

Treating an opposing attorney's time and billing as a factor in awarding attorney's fees to the other side constitutes a questionable practice. *Cf. MCI Telecommunications Corp. v. Crowley*, 899 S.W.2d 399, 403 (Tex. App.—Fort Worth 1995, orig. proceeding) (noting that "[c]onspicuously absent" from the factors commonly used to determine the

25

reasonableness of a party's attorney's fees "is the opposing party's attorneys' fees incurred in the defense of the case"). Using it as the yardstick of reasonableness and necessity is unquestionably arbitrary, which is the test for mandamus relief. *See Sartain*, 2008 WL 920664, at *1 (holding that a trial court "clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law").

## TEMPORARY RELIEF

Relator is concurrently filing a separate motion requesting temporary relief to stay the underlying proceedings pending this Court has determined the merits of this mandamus petition.

Relator's attorney certifies that he has made a diligent effort to notify, and has notified, all parties by expedited means that he intends to file a request for an emergency stay and temporary relief.

## APPENDIX

Relator attaches hereto and incorporates herein by reference an appendix containing a true and correct copy of that portion of the reporter's record showing the orders complained of, as well as copies of the text of the statutes upon which Relator bases his arguments.

## RECORD

Relator is also concurrently filing a mandamus record, which includes sworn or certified copies of every document that is material to his claim for relief and that was filed in the underlying proceeding.

## PRAYER

For these reasons, Relator Lawrence Shipley III asks this Court to:

- grant a stay and temporary relief to prevent the underlying proceedings from going forward until this Court has ruled on the merits of this petition;

- grant this petition for writ of mandamus;

- direct the trial court to vacate its temporary orders rendered on September 16, 2015 requiring Lawrence Shipley III to pay Andrea Vasquez interim attorney's fees; and

- grant Relator all other relief to which he is entitled.

Respectfully submitted,

MICHAEL A. STOCKER
State Bar No. 19257500
mike@stockerfamilylaw.com
55 Waugh Drive, suite 605
Houston, Texas  77007
Telephone: 713.862.3800
Telecopier: 713.869.2088

CHRIS H. NEGEM
State Bar No. 14865480
chris@negemlawfirm.com
LAW OFFICES OF CHRIS H. NEGEM
8620 N. New Braunfels, Suite 105
San Antonio, Texas 78217
Telephone: 210.226.1200
Telecopier: 210.798.2654

*/s/ Robinson C. Ramsey*
ROBINSON C. RAMSEY
State Bar No. 16523700
rramsey@langleybanack.con
CATHERINE M. STONE
State Bar No. 19286000
mstone@langleybanack.com
LANGLEY & BANACK, INC.
745 E. Mulberry Ave., Suite 900
San Antonio, Texas 78212
Telephone: 210.736.6600
Telecopier: 210.735.6889

ATTORNEYS FOR RELATOR

**CERTIFICATION**

STATE OF TEXAS      §

COUNTY OF BEXAR   §

I certify that I have reviewed the above petition for writ of mandamus and have concluded that every factual statement in therein is supported by competent evidence included in the appendix or record.

*/s/ Robinson C. Ramsey*
ROBINSON C. RAMSEY

**CERTIFICATE OF COMPLIANCE**

I certify that the number of words in this Petition for Writ of Mandamus, including its headings, footnotes, and quotations, is: **4338.**

*/s/ Robinson C. Ramsey*
ROBINSON C. RAMSEY

28

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been sent to the following on this 30th day of September, 2015 as follows:

Jason S. Bashara
Email: jsb@basharalaw.com
LAW OFFICES OF JASON S. BASHARA
111 Soledad, Suite 1800
San Antonio, Texas  78205

Hon. Stephani Walsh
45th Judicial District Court
100 Dolorosa
San Antonio, Texas  78205
Email: Clerk45@Bexar.org

*/s/ Robinson C. Ramsey*
ROBINSON C. RAMSEY

# APPENDIX

A.    Reporter's Record: Temporary Hearing (September 16, 2015)

B.    Judge's Notes: Temporary Hearing (September 16,2015)

C.    TEX. CONST. art. V, § 6

D.    TEX. FAM. CODE ANN. § 105.001 (West 2014)

E.    TEX. GOV'T CODE ANN. § 22.221 (West 2004)

REPORTER'S RECORD
VOLUME 1 OF 1 VOLUMES
TRIAL COURT CAUSE NO. 2012-CI-13421

| IN THE INTEREST OF | )IN THE DISTRICT COURT |
| | ) |
| ███████████████ | )BEXAR COUNTY, TEXAS |
| | ) |
| | )175TH JUDICIAL DISTRICT |

## MOTION ON INTERIM ATTORNEY'S FEES

On the 16th day of September 2015, the following proceedings came on to be held in the above-titled and numbered cause before the Honorable Stephani Walsh, Judge Presiding, held in San Antonio, Bexar County, Texas.

Proceedings reported by computerized stenotype machine.

APPEARANCES

Mr. Jason S. Bashara
Law Office of Jason S. Bashara
Riverview Towers, Suite 1800
111 Soledad Street
San Antonio, Texas   78205
Attorney for the Petitioner

Mr. Michael A. Stocker
Stocker Family Law
55 Waugh Drive, Suite 605
Houston, Texas   77007
Attorney for the Respondent

Mr. Christopher H. Negem
Negem Law Firm
8620 N. New Braunfels Ave, Suite 105
San Antonio, Texas   78217
Attorney for the Respondent

VOLUME 1

**MOTION ON INTERIM ATTORNEY'S FEES**

September 16, 2015

| | PAGE | VOL. |
|---|---|---|
| Court's Ruling ...........................38 | | 1 |
| Reporter's Certificate ...................44 | | 1 |

by Mr. Shipley and the Shipley company before they countersued. They're on contingency fee, Judge.

I have testified to you as an officer of the court and been sworn in. These are the fees that I need, so --

THE COURT: Mr. Bashara --

MR. BASHARA: -- that's all I got.

THE COURT: -- just answer me one question. Do you represent Ms. Vasquez in the underlying real estate litigation?

MR. BASHARA: Absolutely not. And my engagement letter reflects only as far as a modification is concerned. I have nothing to do with the real estate case.

MR. NEGEM: And I'd just be curious as to why her counsel is here on a nonfamily law matter.

THE COURT: The Court's going to make a ruling. The Court's going to order $10,000. The Court is going to order that the attorneys exchange bills monthly. The attorneys are ordered to be up to date and accurate on their bills. They may redact for attorney-client privilege. Mr. Bashara is ordered to segregate his fees with regards to enforcement and any consultation with real estate litigation so as to have a clean bill with regards to this modification.

MR. BASHARA: Does the Court wish to order --

THE COURT: And the Court is going to order additional attorney's fees monthly on an hourly basis at 350 an hour and an equalization manner. So if you spend 20 hours between the two of you, then you owe Mr. Bashara 20 hours.

MR. NEGEM: Judge, just so we understand, so $10,000 in interim fees and in addition to that an equalization?

THE COURT: When that runs out, when he uses his -- 28 hours is what I have gone with. When he used up his 28 hours, you should have 28 hours on that side and from then on we will be equal. I don't care how the two of you split it up. I know that you charge more, but that's why I did it on an hourly basis.

MR. NEGEM: Okay.

THE COURT: Because you now know what his hourly rate is, so...

MR. BASHARA: Does the Court wish to order us to mediation or should I file --

THE COURT: No. The Court's not finished yet.

MR. BASHARA: Yes, ma'am.

THE COURT: The Court is going to order both parties to supplement their outstanding discovery since it's outdated. Is 30 days unreasonable?

MR. BASHARA: No, ma'am.

THE COURT: Either side?

MR. STOCKER: Fine.

THE COURT: 30 days. And the Court is going to order mediation. And when would that be appropriate given any outstanding discovery that needs to be done? Have a trial in 120 days. Early December, late November?

MR. NEGEM: 30 days, 45 days. We're ready. We're the defense in this case.

MR. STOCKER: 45-50 days.

THE COURT: Mr. Bashara?

MR. BASHARA: Let's do 60 days just in case we run into a snag regarding the motions to compel. But I'm ready to go at that point.

THE COURT: Okay. You want to choose a mediator or do you want me to appoint? You want to agree -- take an opportunity to discuss it and agree on it and if not I'll pick one at the motion to enter date?

MR. STOCKER: I think we can probably agree on one, Judge.

THE COURT: All right. Mediation is ordered, 60 days. If you can't agree by the time we enter the order, I'll pick.

And the Court is going to order the Longoria bill produced.

MR. STOCKER: When is that to be produced?

THE COURT: Within that 30 days. It's outstanding.

MR. BASHARA: Your Honor, my calculations show that 120 days is on or about January 18, being a Monday.

THE COURT: Right.

MR. BASHARA: I stand ready on the 18th. I'm ready --

THE COURT: No. I'm going to let y'all confer. I'm giving you a motion to enter date. Call in, please, because -- let's see. Gone way over. You are going to get me in trouble with Judge Noll.

MR. BASHARA: I did tell Judge Noll 45 minutes.

THE COURT: Okay.

MR. BASHARA: He told me to do it in 15. I told him I'd try.

THE COURT: Well, I'll tell him I got a

whole lot more work done. There are three hearings I have taken care of already.

MR. BASHARA: Thank you, Your Honor. I appreciate it.

THE COURT: Motion to compel and mediation and trial setting.

So, what do your calendars look like, this is not a difficult order, for the first week of October to enter an order, only if you disagree?

MR. BASHARA: October 5 sounds good to me, Judge. That's the Monday of that -- or I can make it the 9th if you guys want an extra week to confer. I know Chris's office is very fast in getting back to me. I have worked with his office.

THE COURT: And, Mr. Stocker, you can appear by phone if you want. We talk all over the country.

MR. STOCKER: Very good. Thank you, Judge. At this time, the week of the 5th, any time. I can make anything work that week as far as the entry.

THE COURT: All right. How about October 6th? 8:15 or 3:30?

MR. STOCKER: 8:15, please.

MR. BASHARA: 8:15.

THE COURT:  All right.  Mr. Negem, if I fax it to you, will you fax it to Mr. Stocker or else -- Mr. Stocker, give me your fax number on Judge's Notes.

MR. STOCKER:  713-869-2088, Judge.

THE COURT:  Mr. Negem?

MR. NEGEM:  798-2654.

THE COURT:  Mr. Bashara?

MR. BASHARA:  210-227-1547.

THE COURT:  Thank you.

(Court adjourned.)

* * * * * * * * *

STATE OF TEXAS

COUNTY OF BEXAR


I, MONICA CRAWFORD, Official Court Reporter in and for the 175th District Court of Bexar, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $231.00 and was/will be paid by Bashara Law Firm..

Signed this 21st day of September, 2015.

/s/ Monica Crawford

MONICA CRAWFORD, CSR # 5591
Official Court Reporter
175th District Court
Bexar County, Texas
300 Dolorosa Street
San Antonio, Texas 78205
Telephone: 210-335-2529

# JUDGE'S NOTES

CAUSE NO.: 2012CI13421

COURT: 166

DATE/TIME: 09/16/2015 08:30AM

SETTING COURT: 109

STYLE: ████████████████

DISCOVERY LEVEL: 4
ATTORNEY(S) FOR CASE:

JOHN LONGORIA ── DAD
CHRIS NEGEM ── DAD
JASON BASHARA ── MOM

MICHAEL STOCKER ── DAD
JEANIE CUPIT

DEPUTY

THIS CASE HAS 15 OR MORE ATTORNEYS

TYPE OF MOTION OR APPLICATION:
NON-JURY SETTING ON M/F INTERIM ATTORNEY FEES

~45 min

JSB

Monica Crawford
210-335-2597
mcrawford@bexar.org

CONFERRING _____ ESTIMATE HEARING TIME 15 min

AGREED ORDER _____ ASSIGNED COURT 45th

DROP _____ RECORD TAKEN yes

INTERPRETER _____ RESET DATE _____ TIME _____

DATE OF NOTES 16 Sept 2015

JUDGE INITIALS SAW

Mtn for Interim AFs - granted. Fa to pay 10,000 to JSB NLT 10/6/15 as interim AFs, court finds representation by counsel necessary for welfare of child given, 3 yr litigation spending w/o resolution, changed needs of child since last hrng. Fa to pay an equal amt monthly as he ~~por~~ incurs or pays legal fees for his attorneys based on an hourly basis + not $ basis. If Dad incurs 10 hours a month he pays JSB 10 hrs @ $350⁰⁰. Attnys to submit accurate, up to date billings to each other monthly redacted only as to A-C priviledge + ~~neg~~ ~~data~~ ~~from~~ stg + O/litigation. Each supplem incl. Longoria & Neill outstand or outdated discovery 30 days, mediate 60 days, trial 120 days. If mediator + trial date not agreed by MTE on 10-6-15 @ 8:15 Court 713-869-2088 / 798-2654 / 227-1547 will choose. SAW

PROPERTY OF BEXAR COUNTY DISTRICT CLERK'S OFFICE

(DK510A)

Received Time Sep. 16. 2015 1:56PM No. 6520

CAUSE NO.: 2012CI13421

COURT: 166

DATE/TIME: 09/16/2015 08:30AM

SETTING COURT: 109

STYLE: ████████████████████

DISCOVERY LEVEL: 4
ATTORNEY(S) FOR CASE:
JOHN LONGORIA
CHRIS NEGEM
JASON BASHARA

MICHAEL STOCKER
JEANIE CUPIT

BY

DEPUTY

THIS CASE HAS 15 OR MORE ATTORNEYS

TYPE OF MOTION OR APPLICATION:
NON-JURY SETTING ON M/T SUBSTITUTE COUNSEL

JSB

CONFERRING_____ ESTIMATE HEARING TIME_____
AGREED ORDER_____ ASSIGNED COURT_____
DROP_____ RECORD TAKEN _NONE_
INTERPRETER_____ RESET DATE_____TIME_____

DATE OF NOTES _16 Sept 2015_                        JUDGE INITIALS _SAW_

_Order of Substitution Signed. Sewell_

**PROPERTY OF BEXAR COUNTY DISTRICT CLERK'S OFFICE**

(DK510A)

Vernon's Texas Statutes and Codes Annotated
  Constitution of the State of Texas 1876 (Refs & Annos)
    Article V. Judicial Department

Vernon's Ann.Texas Const. Art. 5, § 6

§ 6. Courts of Appeals; Terms of Justices; Clerks

Effective: November 26, 2001
Currentness

Sec. 6. (a) The state shall be divided into courts of appeals districts, with each district having a Chief Justice, two or more other Justices, and such other officials as may be provided by law. The Justices shall have the qualifications prescribed for Justices of the Supreme Court. The Court of Appeals may sit in sections as authorized by law. The concurrence of a majority of the judges sitting in a section is necessary to decide a case. Said Court of Appeals shall have appellate jurisdiction co-extensive with the limits of their respective districts, which shall extend to all cases of which the District Courts or County Courts have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law. Provided, that the decision of said courts shall be conclusive on all questions of fact brought before them on appeal or error. Said courts shall have such other jurisdiction, original and appellate, as may be prescribed by law.

(b) Each of said Courts of Appeals shall hold its sessions at a place in its district to be designated by the Legislature, and at such time as may be prescribed by law. Said Justices shall be elected by the qualified voters of their respective districts at a general election, for a term of six years and shall receive for their services the sum provided by law.

(c) All constitutional and statutory references to the Courts of Civil Appeals shall be construed to mean the Courts of Appeals.

**Credits**
Amended Aug. 11, 1891, proclamation Sept. 22, 1891; Nov. 7, 1978; Nov. 4, 1980, eff. Sept. 1, 1981; Nov. 5, 1985; Nov. 6, 2001, eff. Nov. 26, 2001.

Notes of Decisions (441)

Vernon's Ann. Texas Const. Art. 5, § 6, TX CONST Art. 5, § 6
Current through the end of the 2015 Regular Session of the 84th Legislature

Vernon's Texas Statutes and Codes Annotated
  Family Code (Refs & Annos)
    Title 5. The Parent-Child Relationship and the Suit Affecting the Parent-Child Relationship (Refs & Annos)
      Subtitle A. General Provisions
        Chapter 105. Settings, Hearings, and Orders (Refs & Annos)

V.T.C.A., Family Code § 105.001

§ 105.001. Temporary Orders Before Final Order

Effective: September 1, 2003
Currentness

(a) In a suit, the court may make a temporary order, including the modification of a prior temporary order, for the safety and welfare of the child, including an order:

(1) for the temporary conservatorship of the child;

(2) for the temporary support of the child;

(3) restraining a party from disturbing the peace of the child or another party;

(4) prohibiting a person from removing the child beyond a geographical area identified by the court; or

(5) for payment of reasonable attorney's fees and expenses.

(b) Except as provided by Subsection (c), temporary restraining orders and temporary injunctions under this section shall be granted without the necessity of an affidavit or verified pleading stating specific facts showing that immediate and irreparable injury, loss, or damage will result before notice can be served and a hearing can be held. Except as provided by Subsection (h), an order may not be rendered under Subsection (a)(1), (2), or (5) except after notice and a hearing. A temporary restraining order or temporary injunction granted under this section need not:

(1) define the injury or state why it is irreparable;

(2) state why the order was granted without notice; or

(3) include an order setting the cause for trial on the merits with respect to the ultimate relief requested.

(c) Except on a verified pleading or an affidavit in accordance with the Texas Rules of Civil Procedure, an order may not be rendered:

(1) attaching the body of the child;

(2) taking the child into the possession of the court or of a person designated by the court; or

(3) excluding a parent from possession of or access to a child.

(d) In a suit, the court may dispense with the necessity of a bond in connection with temporary orders on behalf of the child.

(e) Temporary orders rendered under this section are not subject to interlocutory appeal.

(f) The violation of a temporary restraining order, temporary injunction, or other temporary order rendered under this section is punishable by contempt and the order is subject to and enforceable under Chapter 157.

(g) The rebuttable presumptions established in favor of the application of the guidelines for a child support order and for the standard possession order under Chapters 153 and 154 apply to temporary orders. The presumptions do not limit the authority of the court to render other temporary orders.

(h) An order under Subsection (a)(1) may be rendered without notice and an adversary hearing if the order is an emergency order sought by a governmental entity under Chapter 262.

**Credits**
Added by Acts 1995, 74th Leg., ch. 20, § 1, eff. April 20, 1995. Amended by Acts 1997, 75th Leg., ch. 575, § 5, eff. Sept. 1, 1997; Acts 1999, 76th Leg., ch. 1390, § 3, eff. Sept. 1, 1999; Acts 2003, 78th Leg., ch. 1036, § 1, eff. Sept. 1, 2003.

Notes of Decisions (76)

V. T. C. A., Family Code § 105.001, TX FAMILY § 105.001
Current through the end of the 2015 Regular Session of the 84th Legislature

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

 © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Government Code (Refs & Annos)
    Title 2. Judicial Branch (Refs & Annos)
      Subtitle A. Courts
        Chapter 22. Appellate Courts
          Subchapter C. Courts of Appeals (Refs & Annos)

V.T.C.A., Government Code § 22.221

§ 22.221. Writ Power

Currentness

(a) Each court of appeals or a justice of a court of appeals may issue a writ of mandamus and all other writs necessary to enforce the jurisdiction of the court.

(b) Each court of appeals for a court of appeals district may issue all writs of mandamus, agreeable to the principles of law regulating those writs, against a:

   (1) judge of a district or county court in the court of appeals district; or

   (2) judge of a district court who is acting as a magistrate at a court of inquiry under Chapter 52, Code of Criminal Procedure, in the court of appeals district.

(c) Repealed by Acts 1987, 70th Leg., ch. 148, § 2.03, eff. Sept. 1, 1987.

(d) Concurrently with the supreme court, the court of appeals of a court of appeals district in which a person is restrained in his liberty, or a justice of the court of appeals, may issue a writ of habeas corpus when it appears that the restraint of liberty is by virtue of an order, process, or commitment issued by a court or judge because of the violation of an order, judgment, or decree previously made, rendered, or entered by the court or judge in a civil case. Pending the hearing of an application for a writ of habeas corpus, the court of appeals or a justice of the court of appeals may admit to bail a person to whom the writ of habeas corpus may be granted.

**Credits**

Acts 1985, 69th Leg., ch. 480, § 1, eff. Sept. 1, 1985. Amended by Acts 1987, 70th Leg., ch. 69, § 1, eff. May 6, 1987; Acts 1987, 70th Leg., ch. 148, §§ 1.35, 2.03, eff. Sept. 1, 1987; Acts 1991, 72nd Leg., ch. 58, § 1, eff. May 2, 1991; Acts 1995, 74th Leg., ch. 839, § 1, eff. Sept. 1, 1995.

**Editors' Notes**

**REVISOR'S NOTE**

**2004 Main Volume**

The revised law in Subsection (b) omits "or any Justice thereof, in vacation," from the source law in V.A.C.S. Article 1824 because amendments to V.A.C.S. Article 1816 have changed the original term of the courts of appeals from the first Monday in October until the first Monday in July to a term beginning and ending with each calendar year.

Notes of Decisions (305)

V. T. C. A., Government Code § 22.221, TX GOVT § 22.221
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**  © 2015 Thomson Reuters. No claim to original U.S. Government Works.