

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-19-00440-CV

**IN RE** Chandler Jay **LEE**

Original Mandamus Proceeding[1]

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:        Luz Elena D. Chapa, Justice
                Beth Watkins, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: August 7, 2019

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

During the pendency of a suit for modification of the parent-child relationship, the trial court entered temporary orders that lifted a geographical restriction imposed on the children's mother. Because we conclude the mother did not satisfy her statutory burden, we conditionally grant the petition for writ of mandamus.

### BACKGROUND

Relator and the real party in interest are the divorced parents of three children. The middle child ("J.A.L.") has several severe physical disabilities. Under the July 11, 2018 divorce decree, the parents were appointed joint managing conservators of the children and the mother (hereinafter, "Natalie") was given the exclusive right to designate the children's primary residence.

---

[1] This proceeding arises out of Cause No. 2018-CI-03759, styled *In the Interest of M.M.L., J.A.L., and E.J.L., Children*, pending in the 438th Judicial District Court, Bexar County, Texas, the Honorable Gloria Saldana presiding.

However, the decree required the children's primary residence to be within the North East Independent School District.[2]  Under the decree, relator was required to move from Guadalupe County to the North East Independent School District in Bexar County by June 1, 2019 or the geographical restriction would be lifted.  Relator complied with the decree and moved to a house approximately a half mile from the children's school by the end of May 2019.  Relator also was required to pay child support.

On March 6, 2019, Natalie filed an original petition to modify the parent-child relationship. In her petition, Natalie asked the divorce decree be modified to deny relator access to the children or allow only supervised access.  Natalie alleged relator "has a history or pattern of past or present child neglect or physical abuse directed against" J.A.L.  Natalie requested temporary orders appointing her sole managing conservator and appointing relator temporary possessory conservator.  On that same date, Natalie also filed a motion for temporary orders asking she be appointed temporary sole managing conservator, relator be denied access to the children or allowed only supervised access, and relator be ordered to pay child support.  Relator filed an answer and a counter-petition to modify the parent-child relationship.

The trial court conducted a hearing on May 8, 2019 at which time Natalie asked the court to lift the geographical restriction to allow her and the children to move to Florida.  On June 28, 2019, the trial court signed temporary orders that, among other things, lifted the geographical restriction.  On June 28, relator filed his petition for writ of mandamus and a motion for emergency relief in which he stated his summer visitation would end on July 7, 2019 at which time he believed Natalie would move with the children to Florida.  This court issued a stay and requested a response. Natalie filed a response, to which relator replied.

---

[2] Relator is in the Army and stationed at Fort Sam Houston.

**STANDARD OF REVIEW**

Mandamus is an extraordinary remedy that will issue only to correct a clear abuse of discretion when there is no other adequate remedy at law. *In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 623 (Tex. 2007) (orig. proceeding). "A trial court has no 'discretion' in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). Also, legal and factual sufficiency challenges to the evidence are relevant factors in assessing whether the trial court abused its discretion. *In re Rogers*, 370 S.W.3d 443, 445 (Tex. App.—Austin 2012, orig. proceeding). "Thus where, as here, an abuse-of-discretion standard applies, we must engage in a two-pronged inquiry, asking (1) whether the trial court had sufficient information on which to exercise its discretion; and, if so, (2) whether the trial court erred in its application of discretion based on that information." *Id.*

Because temporary orders in suits affecting the parent-child relationship are not appealable, a petition for writ of mandamus is an appropriate means to challenge them. *Dancy v. Daggett*, 815 S.W.2d 548, 549 (Tex. 1991) (orig. proceeding) (per curiam); *In re Herring*, 221 S.W.3d 729, 730 (Tex. App.—San Antonio 2007, orig. proceeding).

**ANALYSIS**

The Texas Family Code provides, in relevant part, as follows:

> While a suit for modification is pending, the court may not render a temporary order that has the effect of creating a designation, or changing the designation, of the person who has the exclusive right to designate the primary residence of the child, or the effect of creating a geographic area, or changing or *eliminating the geographic area, within which a conservator must maintain the child's primary residence*, under the final order *unless the temporary order is in the best interest of the child and the order is necessary because the child's present*

- 3 -

> *circumstances would significantly impair the child's physical health or emotional development . . . .*

TEX. FAM. CODE § 156.006(b)(1) (emphasis added).

Relator and Natalie both acknowledge that most of the caselaw applying section 156.006 addresses temporary orders that have the effect of changing the person with the exclusive right to designate a child's primary residence. Natalie argues, therefore, that this court should not look solely to these cases, but instead, should use "a more general approach." We disagree. Section 156.006 unambiguously requires, in addition to a showing of best interest, that the temporary orders are "necessary because the child's *present circumstances* would *significantly impair* the child's physical health or emotional development." *Id.* (emphasis added). "A court may not judicially amend a statute and add words that are not implicitly contained in the language of the statute." *Lee v. City of Houston*, 807 S.W.2d 290, 294-95 (Tex. 1991). Therefore, we consider whether Natalie satisfied her statutory burden to show significant impairment.

"Section 156.006 imposes a high burden on the movant to present evidence that a child's present circumstances are *significantly* impairing his or her physical health or emotional development." *In re J.W.*, No. 02-18-00419-CV, 2019 WL 2223216, at *3 (Tex. App.—Fort Worth May 23, 2019, orig. proceeding) (mem. op.) (applying significant impairment standard to temporary orders that had effect of creating a geographical restriction). Because the "significant impairment" standard is a high one, the movant—here, Natalie—must present evidence of bad acts or omissions committed against the children. *In re Eddins*, No. 05-16-01451-CV, 2017 WL 2443138, at *4 (Tex. App.—Dallas June 5, 2017, orig. proceeding) (mem. op.); *see also In re C.G.*, No. 04-13-00749-CV, 2014 WL 3928612, at *8 (Tex. App.—San Antonio Aug. 13, 2014, no pet.) (mem. op.) (placing burden on movant).

Most of the evidence adduced at the hearing focused on J.A.L., who was seven years old at the time of the hearing.[3] J.A.L.'s pediatrician testified about the child's extensive physical ailments. The doctor stated he never saw any signs of abuse or neglect and all the child's medical needs, including specialized treatment, were met at BAMC. In the doctor's opinion, J.A.L. should live within ninety minutes of a hospital, although it would be better if he lived within thirty minutes of a major hospital. The doctor said J.A.L. had special dietary needs. When asked on cross-examination if the failure to observe proposed or suggested guidelines for J.A.L.'s diet would be a form of child abuse or neglect, the doctor stated it depended on whether it was a one-time oversight or a chronic problem. The doctor acknowledged there was an Air Force Base in Florida, and although he was not familiar with its hospital, he knew it did not meet the same standards as BAMC, which is designated as one of only four Army "major treatment facilities."

Natalie testified she wanted to move to Florida where she would initially live with her parents in their three-bedroom two-story house[4] and she would look for permanent employment. Until she found permanent employment, Natalie said she could work for her father. Natalie stated a move to Florida would improve her standard of living and be less stressful for her. She said a move to Florida would result in a positive improvement for her and the children, and an economic and educational benefit for her. She believed the children would benefit from her having less stress

---

[3] Natalie said one of the other children, the eight-year-old daughter, was in play therapy twice a month for "outbursts" and the third child, a toddler, was never mentioned. Natalie said relator contributed to her daughter's behavioral problems by talking to the child about the divorce and talking negatively about Natalie. However, she also admitted she told the children they may be moving to Florida and she thought it was "perfectly reasonable" for her daughter to tell her father and paternal grandparents "that Mommy needs help, and we have to move to Florida . . . ." Natalie said she wanted to move to Florida because it was very stressful to hear that from her daughter. Natalie admitted the outbursts occurred when her daughter was with her and did not occur when the child was at school or with her father or paternal grandparents.

[4] The house is not ADA-compliant and J.A.L., who is in a wheelchair, would need to be carried up and down the stairs. The maternal grandparents live in a gated community on a bayou and there is no fence preventing the children from accessing the seawall.

in her life and they would have more social interaction with cousins who lived nearby. Natalie's sister lives in the parents' guesthouse with her four children.

According to Natalie, J.A.L.'s nutritionist recommended no meat in his diet, but relator refused to comply. Relator testified he only wanted to hear the details from a medical professional and as soon as he received the recommendation directly from the nutritionist, he stopped allowing the child to eat meat. Natalie admitted relator wanted to hear the details from the nutritionist and she admitted she had no evidence relator fed his son meat.

When asked what material change occurred since the divorce, Natalie stated J.A.L. is epileptic and has had three grand mal seizures in the last seven months. Natalie alleged J.A.L. suffered seizures while with relator and relator's parents; however, she admitted some of the child's seizures occurred while he was in her care. She admitted the seizures may have been due to a step-down in the child's medication.

Natalie also conceded the March 7, 2019 medical records—entered the day after she filed her petition—indicated "no signs of abuse or neglect" and, when confronted with the fact that she did not sign an affidavit alleging abuse or neglect, Natalie admitted she "didn't have the evidence." When asked about other instances of abuse, in addition to feeding J.A.L. "the wrong things," she said J.A.L. fell while in the paternal grandparents' care: once he scraped his knee "pretty significantly" when they were trying to put him in the swimming pool and another time he fell out of a high king-size bed.[5] She said she bathed the children every Sunday and Wednesday and maybe a third day as well.

Relator testified that when Natalie filed her petition alleging abuse and neglect, he informed his Army command, which referred the matter to four separate Army agencies, all of

---

[5] The maternal grandmother testified her granddaughter scraped her knee when she drove an ATV into the seawall.

which cleared him. He said he stopped feeding meat to his son after he received instructions from the nutritionist. His new residence allows his son to move about freely in a wheelchair. He said that while in Natalie's care, their daughter has had twenty-four tardies and five absences from school. Relator's parents are both retired, live nearby, and, under the terms of the divorce decree, exercise relator's visitation when relator is deployed. They will soon move closer to Natalie's residence, and their new home will be ADA-compliant.

The trial court's temporary orders contain no specific findings, but the transcript from the hearing reveals the court's concerns were more about Natalie and less about the children:

> Mom is feeling very stressed. I think she needs the support of her family at this time so that she can provide the best care for her children. She is the primary caretaker at this point. And I see that — I mean, this is, you know, scary. If something happens to Mom, what's going to happen to the children? And I'm talking more about — well, this is about the best interest of the children. If Mom is given the support she needs to feel emotionally stable at this point in time, the children are going to benefit.
>
> . . .
>
> I think there is a material change in the sense that this child having these seizures is – is an important symptom that we cannot ignore, but we need Mom to be strong and healthy in order to deal with this.

The trial court's concern about Natalie's stress level may "be reasonable to consider if the only standard were the best interest of the children." *In re Payne*, No. 10-11-00402-CV, 2011 WL 6091265, at *2 (Tex. App.—Waco Dec. 2, 2011, orig. proceeding) (mem. op.) (noting trial court's motivation to change designation of person with right to designate primary residence seemed to be based, at least in part, on avoiding a second move back to Leon County in the event the modification was granted at the final hearing). "However, the standard for making a modification in a temporary order that has the effect of [eliminating the geographic area within which a conservator must maintain the child's primary residence] has been set very high by the Legislature in requiring the finding of significant impairment." *Id.* What is best for the child's parent is not a

statutory ground for rendering temporary orders that eliminate the geographic area within which a conservator must maintain the child's primary residence. *See In re Sanchez*, 228 S.W.3d 214, 219 (Tex. App.—San Antonio 2007, orig. proceeding) (holding same when trial court explained its ruling this way: "It's just because a parent should be there instead of a grandparent. That's why I'm doing it. It's strictly because of that.").

Even accepting all of Natalie's allegations as true, the evidence is legally insufficient to support an implied finding that the children's present circumstances in Bexar County, Texas would significantly impair their physical health or emotional development. *See In re Charles*, No. 03-17-00731-CV, 2017 WL 5985524, at *4 (Tex. App.—Austin Dec. 1, 2017, orig. proceeding) (mem. op.) ("Taking as true Winfree's evidence that Charles had interfered in Winfree's visitation and communications with C.S.C., that the child frequently wore dirty, ill-fitting, or damaged clothes and shoes, and that her hair, body, and underwear were frequently dirty, unkempt, and soiled, that evidence does not rise to the level of showing 'significant impairment.'"); *In re Rather*, No. 14-11-00924-CV, 2011 WL 6141677, at *2 (Tex. App.—Houston [14th Dist.] Dec. 8, 2011, orig. proceeding) (per curiam) (mem. op.) (evidence home messy and unsanitary, child lacked supervision, and came home in freezing temperatures without coat or sweater insufficient to show significant impairment of physical health or emotional development). Therefore, Natalie did not satisfy her high burden under section 156.006(b)(1).

## CONCLUSION

Because section 156.006(b) precludes a trial court from issuing an order eliminating the geographic area within which a conservator must maintain the children's primary residence without evidence triggering a statutory exception to this prohibition, the trial court abused its

discretion by lifting the geographical restriction imposed on Natalie in the divorce decree.[6]  We, therefore, conditionally grant the petition for writ of mandamus and direct the trial court to (1) vacate the "Geographic Restriction" portion of its June 28, 2019 Temporary Orders in Suit to Modify Parent-Child Relationship that states: "It is ordered that the geographical restriction previously imposed on Petitioner, [Natalie], is hereby lifted" and (2) enter an amended order reinstating the geographical restriction imposed on Natalie contained in the July 11, 2018 Final Decree of Divorce.  The writ will issue only in the event we are notified the trial court fails to comply within fifteen days from the date of this opinion.

Luz Elena D. Chapa, Justice

---

[6] Because we conclude the trial court abused its discretion by failing to apply the significant impairment test set out in section 156.006, we do not address whether the record supports an implied finding on best interest.